POLLY WAMSLEY, AND SELIA WAMSLEY, AND OTHERS, HEIRS OF ASBURY WAMSLEY, DECEASED, APPELLANTS, V. JESSE CROOK AND JOHN HALL, APPELLEES.

**Practice:** RECORDS FOR SUPREME COURT. In chancery causes commenced prior to the act of 1867, abolishing distinctions between actions at law and suits in equity, and carried by appeal to the supreme court, the *entire* record should be brought to this court.

**Witnesses:** CONSTRUCTION OF STATUTES. The statute, Gen. Stat. 1873, Sec. 329, p. 582, provides that no "person having a direct legal interest in the result of any civil cause or proceeding, shall be a competent witness therein, when the adverse party is an executor, administrator or legal *representative* of a deceased person." *Held*, that the word *representative* applies to any person or party who has succeeded to the rights of the deceased, whether by purchase, descent, or operation of law.

**Estoppel.** W. and wife, in order to secure the payment of a debt owing by W. to C., conveyed a certain tract of land to C., by deed absolute. Afterwards C. sold the land to H. At the time of this sale W. was absent, but his wife was present consenting thereto, and out of the purchase money paid by H., the debt due C. was first paid, $150 paid to the wife, and a note executed by H., payable to her, for the balance of the purchase money. W. being advised of the transaction directed his wife to take the purchase money. After the death of W., in an action to recover possession of the land by the widow and heirs, it was *held*, that plaintiffs were *estopped* from denying the validity of the sale and deed, there being no evidence of fraud on the part of the defendants.

———. W. and wife had no right to any part of the purchase money, unless their title passed to the purchaser.

———. One cannot be permitted to receive both the purchase money and the land.

APPEAL from Cass county district court.

The action was commenced on the 26th of August, 1865, in the district court of Richardson county, by Polly Wamsley, the widow, and Selia Wamsley, and others, heirs of Asbury Wamsley, against Jesse Crook and John Hall.

At the April term, 1871, of the district court of Cass county, to which the cause had been removed, the cause

was dismissed upon the pleadings and proof, at costs of plaintiffs, and they brought the record to this court by appeal. During the trial of the cause in this court, at the July term, 1873, it appeared that the depositions of the defendants, which had been suppressed by the district court, did not appear in the record. Thereupon further argument in the cause was suspended, and the question being put by *Seth Robinson*, of counsel for appellants, whether in chancery causes, commenced prior to the abolishment of the distinction between actions at law and suits in equity (*Laws of* 1867, 71. *Gen'l Stat.*, 707), as this case was, and carried by appeal to this court, the whole record should be brought up by the appealing party, including depositions suppressed by the court, it was, *per curiam*, answered in the affirmative. And it appearing from the record that certain depositions on the part of plaintiffs had been likewise suppressed, an order was made directing the clerk of the district court to send up a transcript of all suppressed depositions. Upon the record thus made, the cause was heard at the present term.

*Seth Robinson*, for appellants, argued the cause on briefs filed by himself, *Isham Reavis, O. P. Mason, and I. N. Shambaugh*.

I. While, perhaps, in the ordinary acceptation of the term, *legal representatives* mean *executors* and administrators, nevertheless its signification varies with the connection in which it is used, and it may mean *heir, descendant, next of kin, grantee, legatee, devisee*—in short, any person or party who has succeeded to the rights of a deceased person, whether by *purchase, descent, or operation of law;* and while executors and administrators are, generally speaking, the *personal* representatives of the deceased, and represent him in respect of the personalty,

heirs, next of kin, etc., are *real* representatives, and represent the ancestor in respect of the *realty*. But even heirs may, under certain circumstances, be personal representatives; and the term *legal* in this connection simply means *lawful*, and is applied without distinction to both real and personal representatives. *Baines v. Ottey*, 7 *Eng. Ch.*, 465. *Walter v. Makin*, 9 *Id.*, 148. *Booth v. Vickers*, 28 *Id.*, 7. *Ward v. Bowen*, 14 *Wis.*, 40. *Kelton v. Hill*, 59 *Me.*, 259.

II. The transaction, though in the form of a deed and bond to reconvey, was, in fact and in law, a mortgage. 2 *Washb. Real Prop.*, 45, 46, *and cases cited.*

III. While the mortgagee, no doubt, may purchase the equity of redemption and so acquire an absolute title, courts of equity always regard the transaction with suspicion and jealousy, and it will be avoided for fraud actual or constructive, or for any unconscionable advantage taken by the mortagee in obtaining the title. It will be sustained, say the Courts, *if perfectly fair and for an adequate consideration. Russell v. Southard*, 12 *How.*, 139, 154. *Hyndman v. Hyndman*, 19 *Vt.*, 9. *Perkins v. Drye*, 3 *Dana*, 170, 174, *et seq. Remson v. Hay*, 2 *Edw., Ch.* 535, 543. *Holridge v. Gillespie*, 2 *Johns. Ch.* 30. 2 *Washb., Real Prop.*, 67, 68.

IV. To construe the language of Asbury Wamsley into a ratification of the sale to Hall when he tells his wife that he supposes her receipt of the money will make no difference; to take it and go to Ohio; to save the remainder until his return, and then he would have the land back, is manifestly absurd. It was after the transaction was done. It does not authorize her expressly or by implication, to yield possession of the mortgaged premises. It clearly and unequivocally repudiates the transaction as a sale, and as clearly and unequivocally asserts

a right to redeem. So it is plain the title of Asbury Wamsley did not pass.

V. But granting for the sake of argument, that Asbury Wamsley's title passed to Hall, still the wife of the mortgagor is entitled to be endowed of the mortgaged lands.

By the execution of the mortgage the lands became charged with the indebtedness which it was intended to secure, but the legal estate was still in the mortgagor, and the wife was still dowable of the lands. No act, no deed, release or conveyance of the husband or judgment or decree confessed by or recovered against him could prejudice her right, and it could be barred in but two ways, viz: 1st, by a decree of foreclosure, to which she was a party, and 2d, by a formal deed duly executed, acknowledged and delivered, to which she was a party. 1 *Washb. Real Prop.*, 212, *and cases cited. Tyler Inf. & Cov.*, 541, *sec.* 395. *Gen. Stat., chap.* 17, *sec.* 3, 13. *Contra, Reeve's Dom. Rel.*, 124, *et seq., but see note* 1, 125. *Swaine v. Perrine*, 5 *Johns., Ch.* 482. 1 *Smith's L. C.*, 812. *Tyler Inf. & Cov.*, 702, 726, 727. *Glidden v. Strupler*, 52 *Penn. State*, 400.

VI. And as her right to dower of the equity of redemption is unquestionable, so is her right to redeem the premises from the mortgage.

*E. W. Thomas*, for appellees.

I. The testimony shows that Asbury Wamsley, through the agency of his wife, Polly, for a valuable consideration, voluntarily canceled the instrument of defeasance, and delivered the same to Hall. This gave to the deed which Asbury had previously made to Crook, the effect of an original absolute conveyance, even if such deed was originally intended to operate as a mortgage.

1 *Washb. Real Prop.*, 496. *Trull v. Skinner*, 17 *Pick.*, 213. *Harrison v. Trustees*, 12 *Mass.*, 456. *Marshall v. Stewart*, 17 *Ohio*, 356. *Venum v. Babcock*, 13 *Ia.*, 195. *Caruthers, Adm'r, v. Hart.*, 18 *Ia.*, 579. 4 *Greenleaf's Cruise*, 7, *note*.

II.   If a person receive the benefit of an act done without authority on his behalf, and hold it after knowledge of the facts, he will be held to have ratified the transaction. *Chitty's Contr.*, 233, *note*. 2 *Kent's Com.*, 615. *Matthews v. Gillis*, 1 *Ia.*, 253. *Dann v. Cudney*, 13 *Mich.*, 239.

III.   The plaintiffs are estopped from denying the validity of the sale and deed to Hall. 2 *Smith's Lead. Cases* 262. 1 *Amer. Lead. Cases*, 595. 2 *Story's Eq. Jur.*, 1542, 1546. *Deford v. Mercer*, 24 *Ia.*, 118, *and note*.

IV.   This principle is not confined to voidable sales, but extends to cases where the sale is void. *Deford v. Mercer*, 24 *Ia.*, 118, *and note*.

V.   As Asbury did not repudiate the acts of his wife after the same came to his knowledge, this amounts to a ratification, and also creates an estoppel. *Burlington Gas Light Co. v. Green, Thomas & Co.*, 22 *Ia.*, 508. 2 *Smith's Lead. Cases*, 660.

This principle applies, although Asbury was not present at the sale, but afterwards tacitly ratified the same, by not objecting thereto in time to prevent Hall from paying the notes, which he had given to Mrs. Wamsley. *Thompson v. Blanchard*, 4 *N. Y.*, 303.

VI.   We think that the depositions of Hall and Crook are admissible in evidence. The adverse parties in this action are not the legal representatives of a deceased person. The term " legal representative " is a phrase which

has acquired a peculiar meaning in law, and means executor or administrator. *Beezley, adm'r, v. Burgett*, 15 *Ia.*, 192, 2 *Bouv. Law Dict., Title Representatives*

The object of the statute is to exclude the testimony of interested persons only as to transactions had with the deceased personally.

GANTT, J.

In this action the plaintiffs ask for a decree of the court, declaring that the defendants hold a certain tract of land in trust for the plaintiffs, and that a conveyance be made by said defendants to plaintiffs, and also that an account of rents and profits of the premises be taken, etc.

The principal facts in the case are that, on the 16th day of August, 1862, Asbury Wamsley and Polly, his wife, by deed absolute, with general warranty, sold and conveyed the land to Jesse Crook, and on the 22d day of October following, Jesse Crook and wife sold and conveyed the same lands to defendant, Hall. The deed, however, from Wamsley and wife to Crook, was intended to secure the payment of a debt, owing by Wamsley to Crook. At the time the sale was made by Crook to Hall, Asbury Wamsley was in the military service of the United States, but Polly, his wife, was present, consenting to the sale, and at the same time it was agreed and arranged by the parties that out of the purchase money to be paid by Hall, he should first pay the debt due Crook, then pay Mrs. Wamsley $150, and by direction of Mrs. Wamsley, that he execute his note to her payable to her, for the balance of the purchase money. This was done. Mrs. Wamsley says that after the sale to Hall she advised her husband, Asbury, of the transaction, and that he directed her to take the money and go to Ohio if she wished, and take care of the remainder until his return.

He never returned, but died in the military service on the first or second day of March, 1863, and after his death, she disposed of the note, given for the balance of the purchase money, and used the proceeds thereof for her own benefit, and never offered to return the purchase money to Hall.

The proofs in the case were taken before a referee, appointed by the district court for that purpose, and upon the filing of his report a motion was made by plaintiffs to suppress the testimony of Crook and Hall, the defendants, which motion was sustained. Now the two material questions raised in the argument of the case, are: 1. Did the district court err in suppressing the testimony of the defendants? 2. Did the court err in " finding that the plaintiffs are not entitled to any relief as prayed in their bill, and the dismissing of said bill at costs of plaintiffs? "

In respect to the first question, the statute provides that no " person having a direct legal interest in the result of any civil cause or proceeding, shall be a competent witness therein, when the adverse party is an executor, administrator, or legal representative of a deceased person." *General Statutes, Sec.* 329, *p.* 582.

It is said that " in legal parlance, the executor or administrator is most commonly called the legal representative. In regard to things real the heir is also the legal representative, and so is the devisee, who takes by purchase; and the assignee or grantee is also a legal representative of the assignor or grantor, in regard to things assigned or granted." And it is also said that " general expressions in law must be construed to have a general application, unless there be clear indication that they were intended to be used in a restricted sense. Representative is one who exercises power derived from another." *Grand Gulf R. R. v. Ryan,* 8 *S. & M.,* 275. *Davis v. Davis,* 26 *Cal.,* 37. *Kelton v. Hill,* 59 *Me.,* 259.

*Hollister v. Young*, 41 *Verm.*, 160.   And in *Kimball v. Kimball*, 16 *Mich.*, 211, it is said " the evident intent of the statute was to exclude any person having a direct legal interest in the result of the cause, when the adverse party is an executor, administrator, or legal representative of a deceased person, so as to prevent the living from testifying against the representative of the dead.  Death having sealed the lips of the one, the law seals the lips of the other." *Malady v. McEnery*, 30 *Ind.*, 278.   It seems to be the settled rule of law that the word *representative* as used in the statute was intended by the law-giver to designate the person or party who succeeds to the rights of the deceased, whether by purchase, descent or operation of law; and this rule seems to be well founded in reason and sound policy, for any other construction would leave the person or party succeeding to such rights, at the mercy of parties claiming adversely to such rights.

The language of the statute is imperative.  If a person has a direct legal interest in the result of the cause, when the adverse party is the legal representative of the deceased, he shall not be a competent witness.  Whatever may be the ground of his claim, he is excluded as a witness in the case.  Hence the court did not err in sustaining the motion to suppress the testimony of defendants.

In respect to the second question, it may be first observed, the doctrine seems to be well settled that if a conveyance of realty shows upon its face to be in fact a mortgage, its character cannot be affected by any agreement between the parties as to the redemption or other incidents of a mortgage, for the right of redemption attaches as an inseparable incident, created by law, and cannot be waived by agreement.  1 *Wash. Real Estate*, 496.   *Wing v. Cooper*, 37 *Verm.*, 181.   But " where an absolute deed is given accompanied by a simultaneous instrument, operating by way of defeasance, and afterwards the parties, by fair mutual stipulations, agree that

the defeasance shall be surrended and cancelled, with an intent to vest the estate unconditionally in the grantee, by force of the first deed, by such surrender and cancellation the estate becomes absolute in the mortgagee. The original conveyance stands unaffected in form and legal effect; it conveys an estate in fee; the only party who could even claim a right to deny that operation by engrafting a condition upon it has voluntarily surrendered the only legal evidence by which that claim could be supported, and is thereby estopped from setting it up." *Trull v. Skinner*, 17 *Pick.*, 215.

Mrs. Wamsley consented to the sale of the land to the defendant Hall, and her husband, then in the army, being advised by her of the transaction, directed her to take the purchase money. Their only title to the money depended upon the effect of the sale, in divesting the first grantee of any estate in the land, and converting that estate into money by passing the title to purchaser Hall. It was upon this ground alone, in law or equity, that the Wamsley's could take the purchase money. And the receipt and acceptance of the purchase money, was an affirmation that the title had passed to Hall, the purchaser, by virtue of the deed from Crook to him. It is a well settled rule of law that one cannot be permitted to receive both the purchase money and the land. And the application of this principle of estoppel "does not depend upon any supposed distinction between a void and voidable sale. The receipt of the money, with the knowledge that the purchaser is paying it upon an understanding that he is purchasing a good title, touches the conscience, and therefore binds the rights of the party in one case as well as in the other;" and it is said that "equitable estoppels of this character apply to infants as well as adults, to insolvent trustees and guardians as well as persons acting for themselves, and have place as well where the proceeds arise from a sale by authority of law, as

where they spring from the act of the party." *Smith v. Warden,* 19 *Penn. State,* 430, *and cases cited. Stroble v. Smith,* 8 *Watts,* 281. In 2d Smith's Leading Cases, 663, it is said that " when those who are entitled to avoid a sale, adopt and ratify it, by receiving the whole or any part of the purchase money, equity will preclude them from setting it aside subsequently, for reasons which are too plain for statement." *Ibid,* 660, *et. seq.* And as there is no evidence tending to effect the defendants, or either of them, with fraud in the transaction, the decree of the district court must be affirmed.

DECREE AFFIRMED.

Mr. JUSTICE MAXWELL, concurred. LAKE, CH. J. having tried the cause in the district court did not sit.