## WILCKENS v. WILCKENS.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1914.)

No. 4160.

*(Syllabus by the Court.)*

1. WITNESSES (§ 150*)—COMPETENCY—TRANSACTIONS WITH DECEDENT—"REPRESENTATIVE."

An assign of a deceased person is held by the highest judicial tribunal of Nebraska to be his representative, within the meaning of section 6882, Comp. Stat. of Nebraska 1911, which prohibits any person, having a direct legal interest in the result of any civil action or proceeding, from testifying to any transaction or conversation between him and the deceased person, when the adverse party is the representative of the latter, and this ruling is controlling in the national courts.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 560, 653–657; Dec. Dig. § 150.*

For other definitions, see Words and Phrases, First and Second Series, Representative.

Competency of witnesses in federal courts, following state practice, see notes to O'Connell v. Reed, 5 C. C. A. 602; Hinchman v. Parlin & Orendorff Co., 21 C. C. A. 278.]

2. COURTS (§ 366*)—STATE AND FEDERAL COURTS—RULES OF DECISION.

The settled construction by the highest judicial tribunal of a state of the Constitution or statutes of that state is controlling in the national

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

courts, in the absence of any question of a violation of the national Constitution or statutes and any question of general or commercial law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

3. DEEDS (§ 211*)—WITNESSES (§ 139*)—DURESS—SUFFICIENCY OF EVIDENCE—COMPETENCY OF WITNESS—TRANSACTIONS WITH DECEDENT.

The plaintiff alleged that she was forced, by the duress of threats of her son to commit suicide, to convey her property to him, and brought suit after his death against his grantee to avoid her deeds. *Held*, she was not a competent witness to the transaction or the conversations relating to it, and that, after laying aside her testimony, her charge of duress was not sustained by substantial competent evidence.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647; Dec. Dig. § 211;* Witnesses, Cent. Dig. §§ 582–597; Dec. Dig. § 139.*]

Appeal from the District Court of the United States for the District of Nebraska; W. H. Munger, Judge.

Bill by Miene Wilckens against Alwine S. Wilckens. From decree for defendant, plaintiff appeals. Affirmed.

W. J. Courtright, of Fremont, Neb. (S. S. Sidner, of Fremont, Neb., on the brief), for appellant.

John J. Sullivan, of Omaha, Neb., and James G. Reeder, of Columbus, Neb. (Louis Lightner, of Columbus, Neb., on the brief), for appellee.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. This is an appeal by the complainant below from a decree of dismissal of her bill to avoid her deeds made on June 28, 1911, of 320 acres of land in Platte county, Neb., and two lots in Columbus in that state, to her son, Henry Wilckens, on the ground that she was forced to make them by the duress of his threats that he would commit suicide and her fear that he would do so if she did not make the conveyances. The appeal invokes a trial of the case de novo, and the record of the evidence has been examined with care, because the defendant below insists that it contains no competent evidence of the duress, in view of the fact that Henry Wilckens conveyed the property to his wife, the defendant below, on November 7, 1911, and committed suicide about March 15, 1912, before this suit was commenced.

[1] The statute of Nebraska declares that:

"No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness." Comp. Stat. of Nebraska 1911, § 6882.

[2] In the absence of any question of a violation of the national Constitution or statutes and of any question of general or commer-

cial law, the settled construction by the highest judicial tribunal of a state of the Constitution or statutes of that state is controlling in the federal courts, and the Supreme Court of Nebraska has decided that an assign of a deceased person is his representative, within the true intent and meaning of this statute.

[3] The plaintiff was therefore incompetent to testify to any transaction or conversation she had with her son, Henry Wilckens, regarding the issues in this suit, and her testimony thereto must be disregarded. Wamsley v. Crook, 3 Neb. 344; Parrish v. McNeal, 36 Neb. 727, 55 N. W. 222; Kroh v. Heins, 48 Neb. 691, 67 N. W. 771; Smith v. Perry, 52 Neb. 738, 741, 73 N. W. 282.

When her testimony is laid aside, there remains in support of the averment of the bill that, at and for a few days before the time of executing the conveyances, she "was repeatedly and many times threatened by her said son that, unless she made said conveyances, he also would commit suicide," and that she made the conveyances by reason of these threats, the following evidence to which counsel for the plaintiff challenge attention and on which they seem to rely. A. P. Groves testified that in January or February, 1909, more than two years before the deeds assailed were made, Henry told him that he was trying to get his mother to put the property in his name; that his mother objected; and that his father-in-law told him to tell her that, if she did not put the property in his name, he would kill himself. But this evidence is immaterial, because it discloses no threat made to plaintiff, incompetent because it is hearsay and irrelevant because, if such a threat were made in 1909, it was resisted for more than two years, and it does not tend to prove duress in June, 1911.

Fred Rabeler, Sr., testified that four or five years ago Henry said to his mother, "I will kill myself and you also;" and she wept; that on the morning of June 28, 1911, she said she would sign everything in order to relieve her of his threats; and that she said that Henry had told her if she did not sign he would kill her. But this evidence was incompetent, because the threat which this witness heard was so remote in time and so disconnected with the transaction of June, 1911, the remainder of his testimony about threats was hearsay, and the plaintiff, whose statement he repeated, was herself incompetent to testify to it.

Fred Rabeler, Jr., testified that the plaintiff had told him at different times that Henry had threatened her if she did not sign papers, and that he always proceeded by threats that he would commit suicide if she did not accede to his wishes. But this testimony is also hearsay and the repetition of the statement of an incompetent witness.

Ed. Wurdeman testified that a few days before June 28, 1911, the plaintiff told him that Henry had her in court; that about the only way to get out of it was to let him have his own way; and that, if she did not, she feared that he would commit suicide as he had threatened. But so far as the testimony of this witness is of a threat, it is also hearsay, the mere repetition of the statement of an incompetent witness, and incompetent. Where a grantor of sound mind conveys her property to her son, the burden is on the party who al-

leges that the conveyance was induced by duress to prove that averment. The record of the testimony in this case has been read and searched again and again, but there is no substantial competent evidence that Henry Wilckens, at or near in time to the execution of the deeds, threatened that he would commit suicide if the plaintiff did not sign them. No competent witness testified that he heard any such threat, and the only evidence of it is the incompetent testimony of the plaintiff and the hearsay testimony of witnesses to her incompetent self-serving statements, and the court is reluctantly forced to the conclusion that the plaintiff has utterly failed to bear the burden which was upon her to prove that Henry Wilckens made threats to commit suicide at or near the time she made the deeds which overcame her mind and will and caused her against her choice to make the conveyances. There are other facts clearly proved in this case that are not inconsistent with this conclusion. Henry Wilckens' father committed suicide in 1898, and it is doubtless true that the plaintiff ever after kept that fact in mind and feared that Henry, her only son and presumptive heir, might do likewise, and that she never failed to consider and give weight to that fact and fear in exercising her will and making her choice of her action in all she did and said in her relations and transactions with him. But that did not constitute compelling duress but the rational exercise of her mind and will and its free choice of her actions, in view of the fact of the father's suicide and the danger of the son. The plaintiff owned the property in this suit, which was worth many tens of thousands of dollars, from prior to the death of the father until 1906. At the request of her son, she procured money for him at various times and became a surety for the payment of many thousands of dollars of his debts. He was married to the defendant in 1906. In that year she made deeds of the property here in controversy to her son Henry and deposited them with trustees to be delivered to him at her death, in accordance with a written contract signed by her and Henry at that time to the effect that Henry should never advise, urge, or endeavor to influence her to sell or mortgage this property during her life, and that she would not sell, dispose of, or mortgage it, unless it should be necessary to do so to provide her with money to defray her necessary living expenses. On May 23, 1910, they made a written agreement of cancellation of this contract. In May or June, 1911, the plaintiff, who lived in Columbus, wrote Henry, who was then living in California, for money to go to Europe. On receipt of the letter he telegraphed that he would come to Columbus. When the plaintiff was informed that he was coming, she sought to have a guardian of herself and her property appointed so that she would have no power to convey it, and expressed fear that she would be unable to resist any demands he would make, and she executed a trust deed of her property to Mr. Ed. Wurdeman. On Henry's arrival he brought a suit against her and Wurdeman to set aside this trust deed. Fred Rabeler, Jr., and Ed. Wurdeman were her nephews, and they were bankers. She consulted with them, and under their advice she made an agreement of compromise with Henry on June 27, 1911, to the effect that his suit should be and it was dis-

missed; that the trust deed should be annulled; that the plaintiff should convey, and she did convey to Henry Wilckens, on the condition expressed in the deed that she had and should hold a lien on the property conveyed for the payment by him and his assigns to her of $900 on the 1st day of March in each year so long as she should live, the north half of the southeast quarter of section 34 and the west half of the northwest quarter of section 35 in township 19, range one west, and lots 3 and 4 in block 1 of Stevens' addition to Columbus, all in Platte county, Neb.; that she should also convey, and she did convey, to him the northeast quarter of section 34 in the same township and range; and that she should be released, and she was released, from all liability for the payment of many thousands of dollars of debts of Henry for which she was bound as his surety. On the next day the deeds of this property, which this suit was brought to avoid, were made by the plaintiff pursuant to this compromise, and it was performed in other respects. She gave no notice of repudiation or rescission of this contract, and took no steps to rescind it until April, 1912. Meanwhile Henry conveyed the property to his wife, who had no notice that the plaintiff claimed that she had been forced by duress to convey it to him, he became insane, and she placed him in a sanitarium and defrayed his expenses until he died.

The evidence fails to prove that threats or fears of her son's suicide had greater compelling force to cause her to make the deeds and compromise of June 28, 1911, than to cause her to make the deeds and agreement of 1906, or the cancellation of that agreement, or to take other action during the years after the death of her husband, and it cannot be held that all these acts were voidable for duress. The plaintiff was fully advised of the nature and legal effect of the transaction of June 28, 1911. She was not taken alone or by surprise and driven hastily without friends or advice to make the compromise and execute the deeds. She made them after consultation with and advice from her nephews, Fred Rabeler, Jr., and Mr. Wurdeman, experienced business men who knew her and her son, their relations, and her property, and the facts proved fail to sustain the conclusion that her mind or will were overcome and forced by duress to assent to them, and the decree below must be affirmed.

The result of this conclusion is that the plaintiff is entitled to the payment of $900 on the 1st day of March, 1912, and on the 1st day of March in each year thereafter as long as she lives, and, if that is not sufficient for her care and support in comfort in any year, to a sum not exceeding $250 in addition in that year and in each year in which the $900 is so insufficient, and to interest on all deferred payments; that these claims for payments are secured by a lien superior to all other liens and claims that have arisen since June 28, 1911, upon the north half of the southeast quarter of section 34 and the west half of the northwest quarter of section 35 in township 19, range 1 west, and lots 3 and 4 in block 1 of Stevens' addition to Columbus, all in Platte county, Neb., which is and will be enforceable by a proper suit in any court having jurisdiction, notwithstanding this suit and its dismissal on the merits, but the decree below must be, and it is affirmed.