FRANK A. AGNEW v. THE OMAHA NATIONAL BANK.

FILED JULY 3, 1903. No. 12,317.

1. **Res Judicata:** FINAL DECREE. A final order or decree is conclusive as evidence in a subsequent action between the same parties or their privies, upon the matters therein adjudicated.

2. ———: ———. To constitute an order or decree final, and conclusive as evidence in a subsequent action, it must have been a complete disposition of the main thing or matter in controversy, leaving nothing for the further determination of the court.

3. **Effect of Dismissal.** When a suit is dismissed as to one of two or more defendants without prejudice, such defendant ceases to be a party to the record, and the effect of the dismissal is to leave such defendant in the same position as if he had never been a a party to the action.

4. **Dismissal After Interlocutory Decree:** ESTOPPEL. If before such order of dismissal, there has been a decision or decree upon one of several issues made by the pleadings, but such decision does not fix or determine the liability of the defendant who is sub-

sequently dismissed, such preliminary decree does not estop the defendant dismissed from litigating in a subsequent action the same issue.

5. ———: ———. Plaintiff alleged in his petition a partnership, and the conversion by one of the defendants of the assets of the partnership. Such defendant denied the partnership, and denied that it had converted the assets of the partnership. A preliminary decree was entered finding that a partnership did exist, reserving the case for supplemental proceedings and an accounting. Before final decree, said defendant was dismissed out of the case, without prejudice. *Held*, That in a subsequent action between plaintiff and the defendant dismissed, the latter was not concluded by the preliminary decree finding the existence of a partnership.

6. **Evidence:** PEREMPTORY INSTRUCTION. Evidence examined and *held* to sustain the peremptory instruction for defendant.

ERROR to the district court for Douglas county: LEE S. ESTELLE, DISTRICT JUDGE. *Affi med.*

*Joel W. West* and *Timothy J. Mahoney,* for plaintiff in error.

*Richard S. Hall, J. H. McCulloch* and *Paul Charlton,* contra.

KIRKPATRICK, C.

This is an error proceeding prosecuted from a judgment of the district court for Douglas county in favor of the defendant below, in an action wherein Frank A. Agnew, as receiver, was plaintiff, and the Omaha National Bank was defendant. Plaintiff's petition alleged the corporate character of defendant under the laws of congress relating to national banks; that on January 5, 1894, Phil Stimmel and Frank T. Emerson were copartners in a seed growing business at Omaha and Waterloo, Nebraska; that at the date named the copartnership was the owner of chattel property of the value of $51,114, and of evidences of debt amounting to $13,124; and that on or about that date the defendant wrongfully obtained possession of the chattels, notes, bills and accounts receivable, wrongfully and un-

lawfully converting the same to its own use, and to the damage of the partnership in the sum of $64,138.57; that on January 6, 1897, in a suit pending at the time of the filing of this petition in the district court for Douglas county, wherein Emerson, for himself and all other creditors of the copartnership, is plaintiff, and Stimmel is defendant, the plaintiff herein was appointed receiver of the partnership assets, and by order of the court was directed and required to bring suits to recover all debts owing to the partnership; and that plaintiff qualified as such receiver, bringing this suit as such; the petition closing with a prayer for judgment against the defendant for $64,138.57.

Defendant answered, denying generally, but averred that on January 6, 1894, under a valid judgment in its favor, it caused execution to issue against Phil Stimmel, whereby certain property was seized, which was sold, the proceeds being applied in satisfaction of its judgment against Stimmel, and pleaded that all of its acts and doings, and those of the court and its officers, were legal and regular. Plaintiff filed a reply, admitted that defendant had seized certain property upon execution, but that such property was part of the property charged by plaintiff to have been converted by defendant; denied that the execution referred to in defendant's answer was legal and regular; alleged that none of the property so seized was liable on execution against Stimmel; alleged that in the suit theretofore pending in Douglas county, mentioned in the petition, in which suit defendant herein was defendant, a partnership between Emerson and Stimmel was alleged, and that defendant herein, as defendant in that suit, answered, denying the existence of the partnership; that a trial of that issue was had in that cause, wherein defendant herein appeared and defended; that upon consideration the court found that the partnership did exist on January 6, 1894; and on July 10, 1895, entered a decree adjudging that Emerson and Stimmel were partners; that afterwards plaintiff herein was appointed receiver; and that defendant is estopped by record to deny the existence

of such partnership. There was also a plea that defendant was estopped to deny the regularity of plaintiff's appointment as receiver, which it is not necessary to notice.

There was a trial to the court and a jury, and at the conclusion of the testimony the court, on motion of the defendant, instructed the jury to find for defendant. From a judgment rendered on such verdict, and the ruling of the trial court denying the motion of plaintiffs for a new trial, plaintiff prosecutes this proceeding. A somewhat detailed statement of the facts, as they appear in the record, is necessary to apprehend the questions presented in briefs and argument, which require determination.

It appears from the record that the following agreement was entered into on the date and between the parties named therein:

"Memorandum of agreement entered into this 19th day of January, 1892, by and between Phil Stimmel of Omaha, Douglas county, Nebraska, of the one part, and Frank T. Emerson, of the same place, of the other part, witnesseth: That it is hereby mutually understood and agreed between the parties hereto, that the said Phil Stimmel is to furnish all money necessary for all expenses in making contracts for the growing and sale of garden and other seeds for the season of 1892-1893; for the purchase of all stock; planting seeds and delivery of the same; and for all expenses of office, administration, etc., without charge for interest or use. And that Frank T. Emerson is to devote all his time and abilities, to the absolute exclusion of every other business, under the direction and in the name of Phil Stimmel, to the conduct of said business to the best of his knowledge, using all the connections which his former conduct of a like business has brought, together with such other as he may be able to secure. And further, that the said Phil Stimmel is to have sole executive charge, direction and control of the whole of said business, and all contracts of sale are to be passed upon as to their credits by the said Phil Stimmel. The net profits accruing from the afore-

45

said business, after paying all expenses, disbursements and losses, if any, shall be divided between the parties hereto in the proportion of 66⅔ per cent. thereof to Phil Stimmel, and 33⅓ per cent. to Frank T. Emerson, which shall be compensation in full to said Emerson for his good will, services, etc. And further, that said Frank T. Emerson is to be entitled to draw against his said proportionate share of the probable net profits of said business for said season of 1892-1893, the sum of $150 per month from February 1, 1892, to June 1, 1893, or the date when the contracts of the year shall be closed and settled, if before June 1, 1893, at which date a final settlement between the parties hereto is to be made. In witness whereof, the parties have hereunto set their hands to this, and a duplicate instrument of like tenor and effect, at Omaha, Nebraska, the day and year first above written.

"PHIL STIMMEL.

"FRANK T. EMERSON.

"Witness: GEORGE H. TOTTEN.

"OMAHA, NEBRASKA, JANUARY 20, '93.

"By mutual consent, this agreement is extended and continued in full force and effect for twelve months, excepting settlement of 1892 business, that to be on or before June 1, 1893.          PHIL STIMMEL.

"FRANK T. EMERSON."

While this agreement was in full force, and on January 6, 1894, Stimmel, who was largely indebted to the defendant, the Omaha National Bank, and to a firm of attorneys for legal services, made confession of judgment in their favor, upon which executions were issued and levied upon property of Stimmel, and also upon property connected with the business which was being transacted under the agreement quoted above. Thereupon, and before any sale was had under the executions, and on January 24, 1894, Frank T. Emerson, "for himself, and on behalf of all creditors of the seed growing department of Phil Stimmel, who may desire to avail themselves of the benefits of this

action," filed a petition in the district court for Douglas county, making Phil Stimmel, Montgomery, Charlton & Hall, the Omaha National Bank and J. C. Drexel, sheriff, defendants, in which he alleged: The agreement already quoted and faithful performance by him of his part thereof; that the business had been largely profitable, but that defendant Phil Stimmel had excluded him from inspection of the books; that Stimmel had diverted the funds and assets of the said business, and refused to account to him; that the said business owed many obligations, after the payment of which, if the funds thereof were properly applied, there would be left a large surplus for division between Emerson and Stimmel under the agreement mentioned; that the conduct of Stimmel was calculated to inflict great and irreparable injury on plaintiff, Emerson; that Stimmel had confederated with the Omaha National Bank and Montgomery, Charlton & Hall, who had fraudulently procured said confessions of judgment with the fraudulent purpose of levying upon the assets of the seed growing department mentioned, with intent to defraud plaintiff, Emerson, and said creditors; that the debts due from Stimmel, upon which said judgments were based, were private debts of Stimmel, and had no connection with the business known as the seed growing and contracting department of Stimmel; that Stimmel, for the purpose of defrauding plaintiff, Emerson, out of his share of the profits of said business, had diverted the assets of that department to other departments of his business, using the same for the payment of his debts not connected therewith; and that an accounting was necessary to determine what was due to Emerson; that the said defendants had full knowledge of the relations between Emerson and Stimmel; that the defendants named had procured from Stimmel an assignment to them of a large amount of notes, bills, acceptances and accounts belonging to the partnership; and had procured possession of the books thereof in order to cover the fraud perpetrated; that plaintiff, without a discovery, was without remedy; that the character

of most of the chattels levied upon was such, that a sale upon execution would result in great and needless sacrifice; that there were large sums outstanding due to Stimmel on account of the said business, which Stimmel was collecting and converting to his own use; that many replevin suits were being prosecuted to get possession of said goods; that Stimmel was insolvent. The petition closed with a prayer for an accounting between Emerson and Stimmel, "touching the said profit sharing business enterprise"; for the appointment of a receiver, during the pendency of this suit; for an injunction against Stimmel from interfering with the assets of the business referred to; and against defendants from attempting to apply the assets of said business to the satisfaction of their claims.

To this petition of Emerson the Omaha National Bank answered, justifying its seizure, denying fraudulent intent towards Emerson; and denied that he "ever had any interest in the business, goods, property, effects, or assets of the said Phil Stimmel, as a partner of said Stimmel;" and pleaded an adjudication, by the district court for Douglas county, that plaintiff, Emerson, had no claim as against Stimmel on the ground of partnership; and pleading other matters not material here. To this answer plaintiff Emerson pleaded a general denial.

The case of *Emerson v. Stimmel* was thereupon submitted to the court, upon the single issue, whether there was in fact a partnership between Emerson and Stimmel; and upon that issue a decree was, upon July 10, 1895, rendered, adjudging that there was a partnership; that Emerson was entitled to an accounting, as between himself and Stimmel, of the assets and liabilities of the seed growing department of the business of Phil Stimmel; the decree ordered a reference, the referee to report on or before December 20, 1895. To this decree the defendants, Omaha National bank and Montgomery, Charlton & Hall, took exceptions, and were given forty days from the rising of the court to prepare and serve a bill of exceptions.

On May 29, 1896, the Omaha National Bank filed a mo-

tion in the case of *Emerson v. Stimmel* to be dismissed out of that case, at plaintiff's cost, for the reasons: First, that the real intent of the action was to obtain an accounting between Emerson and Stimmel; his prayer for an injunction against the bank having been by a prior order of the court, on July 26, 1894, denied, so that the bank was no longer a necessary or proper party: Second, because it did not appear that plaintiff, Emerson, would upon an accounting be shown to have any interest in the alleged partnership assets; that defendant was not insolvent or liable to become so: Third, that if plaintiff had an action against the bank, it was for conversion, which was an action at law and not in equity: Fourth, that there had been an interlocutory decree, on July 10, 1895, finding a partnership and ordering a reference, but that plaintiff, Emerson, had failed to prosecute his case, whereby, to its great detriment, defendant bank had been wrongfully retained in the case. On September 29, 1896, this motion was sustained; the bank being dismissed, without prejudice, at plaintiff's costs. On January 6, 1897, Frank A. Agnew, plaintiff herein, was, on motion of plaintiff, in *Emerson v. Stimmel*, appointed receiver "of all the partnership effects and assets of every kind and description," both parties being directed to deliver same to him; and he was authorized to sue for and recover all debts due the partnership. Agnew immediately gave bond and qualified as receiver.

After defendant bank had been dismissed, on its own motion, out of the action of *Emerson v. Stimmel*, Agnew, as receiver, commenced against it the action for conversion which is now here for review. However, before this action came on for trial, defendant bank asked and obtained leave again to answer and intervene in the equity suit; and obtained an injunction against plaintiff, Agnew, receiver, from proceeding in the law action herein. But when the equity suit came on for trial, defendant bank was, upon its motion, again dismissed out of that suit; and that suit went on to decree, July 25, 1899, in which judgment was

rendered, upon the report of the referee, against the partnership and in favor of several hundred intervening creditors; but the court expressly declined to give judgment against defendant bank, on the ground that, by dismissing it out of the action, jurisdiction over it had been lost, but found that it was indebted to the partnership in a large sum, directing the receiver to prosecute his action against it. Then it was that the present action was prosecuted to final judgment as already narrated.

While the record in this case is somewhat voluminous, and a statement of the facts necessary to an understanding of the case can not conveniently be embraced within a small compass, there are, at most, only two questions raised by the record, and necessary to be determined: (1) Was the defendant here estopped from denying a partnership by reason of the interlocutory decree of July 10, 1895, entered in the action of *Emerson v. Stimmel*, finding the existence of a partnership at a time when defendant was still a party to that action? (2) If it was not estopped, is the peremptory direction for defendant justified?

Plaintiff, invoking the maxim that a judgment as evidence is conclusive, as a plea, a bar, insists that the decree of July 10, 1895, pleaded in his reply, has all the elements of a final adjudication between plaintiff and defendant on the issue of a partnership, and is *res judicata* herein. It appears that, after that decree was entered and the order of reference was made, defendant bank was twice dismissed out of the action, the latter time, just before the final decree of July 25, 1899, in which decree, as already stated, the court declined to give judgment against the bank and in favor of the receiver, on the ground that, by dismissing it out of the action, it had lost jurisdiction over it. The inquiry accordingly is, what effect did the dismissal of defendant bank, prior to the decree of July 25, 1899, have as to the binding force upon defendant of the decree of July 10, 1895, as to the issue therein adjudicated? Manifestly, the decree of July 10 is *res judicata* as to all parties to the final decree of July 25, 1899.

Is it otherwise as to defendant because it was dismissed before final decree?

To hold in the negative would, we believe, be unwarranted upon sound reason and authority. The decree of July 10 was interlocutory, that is, it was not a final determination of the principal thing sought or litigated in the action commenced by Emerson. It was a separable determination of one issue, declaring that a partnership did exist, leaving still for determination whether defendant was liable, though a partnership did exist. Was that such a final determination as would have given the bank, then in that action, a standing in the appellate court? Had the bank attempted to appeal, a sufficient answer would have been found in *Lodge v. Twell,* 135 U. S. 232. There the plaintiff brought suit against three defendants, one of whom was a judgment debtor to her, under a decree for alimony, and the other two were fraudulent grantees of such debtor. By decree the conveyances were held fraudulent, reserving the case for an accounting as to the value of the property disposed of by the fraudulent grantees. It was held that the first decree, although it disposed of the equities of the case, was interlocutory, from which no appeal lay, as it was still necessary to determine in what amount an order for payment or a money decree should be entered against the defendants, fraudulent grantees. The decree of July 10, in this case, did not even dispose of the equities of the case, and did not purport to fasten upon defendant bank any liability whatever.

In *McGourkey v. Toledo & O. C. R. Co.,* 146 U. S. 536, and the many cases there cited and reviewed, the principle, that a decree ordering a reference to a master for judicial purposes, whose functions are something more than merely ministerial, is not final and not appealable, is shown to be firmly established.

It has, so far as our investigation has led us, been the uniform holding of this court, that an adjudication, to be binding as *res judicata,* must dispose of the whole merits of the case on trial, and leave nothing for the further de-

termination of the trial court. *Johnson v. Parrotte,* 46 Neb. 51, and cases there cited. Under the issues as joined in *Emerson v. Stimmel,* at the rendition of the decree of July 10, 1895, there is nothing to warrant the conclusion that the determination of the issue in that manner settled the question of the liability of the defendant bank to the partnership. Defendant bank might have shown that it had not taken partnership assets. "A judgment to be conclusive must be final and upon the merits." *Cheney v. Cooper,* 14 Neb. 415. That is, it must be full disposition of the main thing sought to be recovered or accomplished by the institution of the suit. This decree can not be said to have had these characteristics. If it was not a final order, final in the sense that it was appealable, then it would seem to follow that it would not conclude defendant bank, herein, as to the issue therein passed upon, unless it can be said—and such seems to be the contention of plaintiff—that it did become final and appealable by virtue of the rendition of the final decree of July 25, 1899. But on that date it was no longer a party to the action, having been authorized by the court to withdraw therefrom; an authorization which, in effect, told it that the final decree about to be entered was no concern of its. With the question of the correctness of the order of dismissal we are certainly not now concerned; but surely it gave to defendant bank a right to assume that it was out of the case; that so far as it was concerned, it was in the same position, no better and no worse, than if the action had never been instituted.

We believe it is the law, applicable here, well sustained by authoritative decisions, that the order of dismissal as to defendant in that action, without prejudice, before final decree, before the liability of any party thereto had been fixed, was, as to the bank, a complete nullification of all that had previously taken place, as well as an exculpation from any liability under the final decree.

In *Loeb v. Willis,* 100 N. Y. 231, it is said:

"By the discontinuance of an action the further pro-

ceedings in the action are arrested not only, but what has been done therein is also annulled, so that the action is as if it never had been."

An examination of the *Loeb* case will, we think, show that it is in point herein. There the plaintiff brought his action to foreclose a mortgage, and procured a decree and judgment for deficiency. Subsequently to the rendition of the decree of foreclosure, but before proceeding to sale thereunder, he made a motion for leave to discontinue his foreclosure suit, and begin an action against the same defendant upon the bond accompanying the mortgage. This was granted and, in the action at law, defendant sought to show matters in avoidance, which were ruled out on the theory that the judgment in the foreclosure suit was an adjudication thereof. Holding this action on the part of the trial court error, the supreme court of New York used the language already quoted. If the order of dismissal after judgment, in the case cited, nullified that judgment and deprived it of the dignity of an estoppel in the action at law, it would seem, upon the same principle, the dismissal under consideration before final decree, but after the interlocutory decree of July 10, 1895, would have like effect in nullifying that decree, so that it would not work an estoppel in a subsequent action at law.

*Ogden City v. Weaver,* 108 Fed. 564, was a suit in the federal court by the receiver of a water works company against Ogden City. The defendant sought to estop the plaintiff by pleading a decree in the state court, in a case in which Ogden City was plaintiff and the receiver's predecessors in interest were defendants, holding the contract declared upon by the receiver invalid. It appeared that, after rendition of the decree mentioned, the case was retained for an accounting with reference to the value of the property affected by the contract and the business transacted between the parties during the period the contract was supposed to be valid, and that the case was still pending before the master in the state court. It was held that the decree was interlocutory, and did not conclude

the receiver, in the federal court, upon the question of the validity of the contract. In the case last cited, the equity suit in the state court was still pending; but in the case at bar, the equity suit in which decree on July 10, 1895, was rendered, had, as to defendant, been discontinued.

We conclude, therefore, that the decree of July 10 did not estop defendant bank to deny the partnership.

If defendant was not concluded by that decree, was the peremptory instruction for defendant right under this record? Counsel for defendant argue at some length that the agreement between Stimmel and Emerson was not a partnership agreement, but merely a profit sharing contract, and that under it Emerson was not responsible for debts or liable for losses, other than a failure of the business to earn profits. However, in view of the conclusion already announced, that the decree in *Emerson v. Stimmel* did not estop defendant, we must inquire whether there is any competent proof of a partnership. Plaintiff alleged such a partnership; defendant denied it; and plaintiff pleaded an estoppel, but has not sustained such plea. This certainly put plaintiff upon other and independent proof of a partnership.

As we view the record, plaintiff seems to have relied for his right to recover, so far as that right must be determined by the existence of a partnership, wholly upon the plea of estoppel and the record evidence introduced in support thereof. It is true, that the agreement is contained in the bill of exceptions, but only as one of the several exhibits introduced in support of the plea of estoppel. Beyond this, the issue of a partnership is without any evidence in its support. Moreover, counsel for plaintiff, in his reply brief, does not claim that the agreement, standing alone, shows a partnership, but says that in the action in which the relationship between Stimmel and Emerson was held to be a partnership, there was much evidence in addition to the agreement, which showed that Emerson also assumed the risks of the business and was liable for the debts, and that in that action it was conclusively proven that there was a

partnership. Under this state of the record, we do not believe that the question of the legal effect of that agreement is before us. It follows that the allegation of a partnership is wholly unsupported by the evidence. Accordingly, it must be held that the judgment of the trial court is right, and it is recommended that the same be affirmed.

HASTINGS, C., concurs.

By the Court: For the reasons stated in the forgoing opinion, the judgment of the district court is

AFFIRMED.