BILL L. HULL, APPELLEE, v. CLINTON R. BAHENSKY,
APPELLANT.

244 N. W. 2d 293

Filed July 28, 1976. No. 40614.

Dixon G. Adams, for appellant.

D. L. Pelton, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

This is an action for rescission of a contract to purchase a laundromat business. The District Court first determined that rescission in equity should be denied but the cause retained for trial as an action at law. Upon later trial as an action at law, the District Court entered judgment against the defendant in the sum of $14,308.90; rescinded the contract; and ordered an accounting for the period of operation by the purchaser. The seller has appealed.

In the fall of 1972, the defendant, Clinton R. Bahensky, listed his laundromat business in Bellevue, Nebraska, with a realty company for sale for $60,000. The plaintiff, Bill L. Hull, made an offer of $40,000 which

was refused. Bahensky reopened the negotiations in the spring of 1973, and on May 19, 1973, Bahensky and Hull executed a written agreement in which Bahensky agreed to sell and Hull agreed to buy the laundromat business. The total purchase price was $45,000. The sum of $13,500 was payable on or before the closing date of June 15, 1973. An additional sum of $11,500 was payable on or before February 15, 1974, and the balance of $20,000 was payable in successive equal monthly installments of $185.41 each, commencing March 15, 1974, with unpaid balances to draw interest at the rate of 7½ percent.

The agreement provided that all equipment used in connection with the operation of the business should be in reasonably good working condition and the critical paragraph in the contract provided: "Seller has made representations during the calendar year of 1972 that the business operation grossed $26,000.00; that the business operation had a taxable income derived therefrom was (sic) $16,000.00 and that the business has been growing. Accordingly, buyer shall be given an opportunity to examine the books or to have the same examined by his bookkeeper for the years 1970, 1971, 1972 for the purpose of verifying the correctness of the aforementioned representations. In the event said representations are incorrect, buyer may, at his discretion, rescind this agreement."

On June 8, 1973, Hull paid the $13,500 due on the date of closing, plus approximately $800 for supplies on hand and took possession of the business. No further payments were ever made.

Hull's evidence is that almost immediately after taking possession, he discovered that many pieces of equipment did not work properly and needed repairs, and that he also soon discovered that the laundromat business did not earn the amounts which had been represented to him. By letter of September 6, 1973, Hull notified Bahensky that he was rescinding the contract and that

Bahensky should pick up his keys. Bahensky's evidence contradicted the evidence of Hull as to the condition of the machines and equipment. Bahensky also testified that Hull had been given a chance to inspect the equipment before he purchased the business. There was a conflict in the testimony as to whether Bahensky's tax returns and records had been inspected by Hull, and there was some dispute as to what specific representations as to income had been made aside from those set out in the agreement. There was no dispute that the tax returns reflected the correct income or profit from the business. Those returns showed gross receipts of $25,761 and a net profit of $4,060 for 1970; $23,510 gross receipts and $5,924 net profit for 1971; and gross receipts of $25,215 and net profit of $8,774 for 1972.

Following a hearing on April 1, 1975, the District Court entered its order and found: "That the plaintiff has failed to prove the requisite requirements for recission (sic) of the agreement and that recission (sic) under equity should be denied, that a court of equity which has denied equitable relief is without authority to determine the issue of personal liability and that the matter should be retained by the Court to be tried as an action at law." The District Court then ordered "that said matter be held over by the Court to be tried as a law action at the next docket call or as soon thereafter as the same may be tried."

In October 1975, the matter was tried as an action at law and on December 15, 1975, the court entered its judgment finding that false representations as to gross and taxable income were made by Bahensky; that the representations were substantial and material; that the demand for rescission was timely made; and that Hull was entitled to rescission as a matter of law. The court then entered judgment against the defendant Bahensky in the sum of $14,308.90, with interest and costs; rescinded the agreement; and ordered an accounting and

settlement for the period of operation of the business by Hull. Bahensky has appealed.

Bahensky contends that the District Court's order of April 1, 1975, denying rescission in equity was res judicata as to any right to rescission, and that the court was therefore without authority to enter its later judgment in the law action. We disagree.

Whatever the understanding of the District Court may have been as to the distinctions between law and equity, there can be no doubt but that the court's order retained the entire matter to be tried as a law action at a later time. That order was not a final order or judgment. Restatement, Judgments, § 41, p. 161, provides: "The rules of res judicata are not applicable where the judgment is not a final judgment." Comment a to that section states: "For the purposes of the rules stated in this Subject a judgment at law is not a final judgment if further judicial action by the court rendering the judgment is required to determine the matter litigated; and a decree in equity is not a final judgment if further action by the court is required beyond the supervision of the carrying out of the decree."

The same comment also states: "An order or judgment of a court is not final if an issue of law or fact essential to the disposition of the action is reserved for judicial determination."

Restatement, Judgments 2d, T.D. No. 1, § 41, p. 2, now states the rule of old section 41 even more forcefully. The first sentence of the revised section is: "The rules of res judicata are applicable only when a final judgment is rendered." Comment a of T.D. No. 1 states the rationale for the requirement of finality. "The rules of res judicata state when a judgment in one action is to be carried over to a second action and given a conclusive effect there, whether by way of bar, merger, or issue preclusion. This Section makes the general common-sense point that such conclusive carry-over effect should not be accorded a judgment which is con-

sidered merely tentative in the very action in which it was rendered. On the contrary, the judgment must ordinarily be a firm and stable one, the 'last word' of the rendering court—a 'final' judgment."

In Agnew v. Omaha National Bank, 69 Neb. 654, 96 N. W. 189, we said: "It has * * * been the uniform holding of this court, that an adjudication, to be binding as res judicata, must dispose of the whole merits of the case on trial, and leave nothing for the further determination of the trial court." A court of equity which has obtained jurisdiction for any purpose may retain jurisdiction for the purpose of administering complete relief between the parties with respect to the subject matter. Northwestern Mut. Life Ins. Co. v. Nebraska Land Corp., 192 Neb. 588, 22 3N. W. 2d 425. Gillespie v. Hynes, 168 Neb. 49, 95 N. W. 2d 457, and kindred cases, are overruled.

Restatement, Judgments, § 67, p. 286, provides: "Where in an action the court holds that the plaintiff cannot enforce a particular claim in that action on the ground that he can enforce it only in a separate action, the judgment does not preclude the plaintiff from enforcing the claim in another action, although in the second action it appears that the holding of the court in the first action was erroneous."

Whether the order of April 1, 1975, was or was not erroneous, it was not a final order or judgment and was not res judicata.

The defendant also contends that the evidence was insufficient to grant rescission on the ground of misrepresentation because the evidence failed to establish that the plaintiff relied upon any representation contained in the contract.

This action was tried as an action at law and a jury was waived. The contract specifically provided for rescission in the event specified representations were incorrect. The trial court found that the specified representations had been made and that they were sub-

stantial and material. The judgment of the trial court in an action where a jury has been waived has the effect of a verdict of a jury and will not be set aside unless clearly wrong. Johnson v. Roueche, 188 Neb. 716, 199 N. W. 2d 1.

The evidence here was more than sufficient to sustain the judgment of the District Court.

AFFIRMED.