Sharmer v. McIntosh.

43 509
44 147

43 509
48 695

43 509
52 324
52 767
55 19
55 162

43 509
56 12
56 33
56 55
57 441

43 509
60 446

43 509
62 495

JOSEPH SHARMER, APPELLEE, V. JAMES J. MCINTOSH, APPELLANT, ET AL.

FILED JANUARY 16, 1895.   No. 5420.

1. **Pledges: PLEADING.** A petition alleging an indebtedness from A to B, and that it had been the custom of A to pledge notes as security for such indebtedness, and that at a certain time there were in B's hands in pledge as collateral security certain notes, is, after answer, a sufficient averment of the pledge of such notes.

2. **Jury Trial: EQUITABLE RELIEF.** Where a petition states a cause of action for equitable relief and prays for equitable relief, a jury cannot be demanded as a matter of right for the trial of any issue arising in the case.

3. **Trial to Court: ADMISSION OF IMPROPER EVIDENCE: REVIEW.** In a case tried to the court without a jury, the admission of improper evidence is not in itself a ground for reversal.

4. **Witnesses:** CONVERSATIONS WITH DECEASED PERSONS. Since the amendment of 1883, section 329 of the Code does not render a party adversely interested to the representative of a deceased person incompetent as a witness in the action, but only renders his testimony as to transactions and ~conversations with the deceased incompetent.

5. **Pledges:** PROOF. Proof that A was indebted to B and that B had in his possession notes payable to the order of A and not indorsed, without other evidence is insufficient to show that such notes were pledged to secure such debt.

6. **Ownership of Property:** EVIDENCE. Possession of instruments which pass by delivery alone is *prima facie* evidence of ownership and therefore is *prima facie* proof in support of a claim of any lesser interest.

APPEAL from the district court of Cheyenne county. Heard below before CHURCH, J.

*George W. Heist* and *Henry St. Rayner,* for appellant:

One who has a direct legal interest in the result of a cause in which the adverse party is administrator of a deceased person is not a competent witness therein. (Code Civil Procedure, sec. 329; *Ransom v. Schmela,* 13 Neb., 74; *Wamsley v. Crook,* 3 Neb., 344; *Magenau v. Bell,* 13 Neb., 248; *Housel v. Cremer,* 13 Neb., 298; *Martin v. Scott,* 12 Neb., 42; *Rakes v. Brown,* 34 Neb., 304; *Kimball v. Kimball,* 16 Mich., 211; *Cook v. Stevenson,* 30 Mich., 242; *Mundy v. Foster,* 31 Mich., 313; *Van Wert v. Chidester,* 31 Mich., 209; *Hart v. Carpenter,* 36 Mich., 402; *Harmon v. Dart,* 37 Mich., 53; *Downey v. Andrus,* 43 Mich., 65; *Rayburn v. Mason Lumber Co.,* 57 Mich., 273; *McCutcheon v. Loud,* 71 Mich., 433; *McHugh v. Dowd,* 86 Mich., 412; *Penny v. Croul,* 87 Mich., 31; *Van Alstyne v. Van Alstyne,* 28 N. Y., 378; *Card v. Card,* 39 N. Y., 317; *Green v. Edick,* 56 N. Y., 613; *Comins v. Hetfield,* 80 N. Y., 265; *Holcomb v. Holcomb,* 95 N. Y., 316; *Rogers v. Brightman,* 10 Wis., 50; *Lawrence v. Vilas,* 20 Wis., 406; *Koenig v. Katz,* 37 Wis., 156.)

The evidence of W. C. Reilly, the legal adviser and attorney of Morgan, as a witness for Sharmer, against the objections of appellant, is clearly within the prohibition of section 333 of the Civil Code, and should have been excluded as privileged. (*Romberg v. Hughes*, 18 Neb., 579; *Loveridge v. Hill*, 96 N. Y., 222; 1 Greenleaf, Evidence, secs. 236–243.)

*Webster, Rose & Fisherdick* and *W. C. Reilly*, contra.

IRVINE, C.

Sharmer brought his action in the district court of Cheyenne county, alleging that the defendant Frank B. Johnson and Samuel C. Morgan had been copartners, doing business as bankers under the name of the State Bank of Sidney, in the town of Sidney, and continued to conduct said business until June 27, 1889, when Morgan died intestate; that the defendant McIntosh was his administrator; that Johnson, since the death of Morgan, had refused to administer the affairs of the partnership and had at all times since Morgan's death denied the existence of the partnership; that the plaintiff had deposited divers sums with the bank and had performed labor for the bank, and that the indebtedness from the bank to the plaintiff at the time of Morgan's death was $4,477.71; that the bank had from time to time given to plaintiff security for the indebtedness to him, usually notes and other evidences of indebtedness belonging to the bank, and that at the time of Morgan's death the plaintiff held as security for the balance due him certain securities named in the petition. Among these were two county warrants, and the remainder thereof were notes made or indorsed to the bank; that McIntosh claimed that Morgan was the owner of said instruments and was threatening to collect the same from the debtors, and that because of the controversy as to the ownership of said instruments the debtors refused to pay the same, and there was great dan-

ger of loss unless they could be collected before the question as to their ownership should be decided. The petition further alleged that Johnson and the estate of Morgan were both insolvent. The prayer was for an injunction restraining the defendants from intermeddling with the notes or warrants or taking any proceedings in relation thereto, for a receiver to take possession thereof, to collect them and to retain the proceeds to abide the final order of the court, for judgment against Johnson and the administrator of Morgan for the amount of the debt, and for a decree establishing the plaintiff's lien upon the notes and warrants, and that the proceeds thereof be applied to the payment of plaintiff. A receiver was appointed as prayed. After the commencement of the suit, McIntosh was in another action appointed receiver of the bank upon the ground that Johnson denied the partnership and refused to exercise the duties of a surviving partner. These facts were set up by supplemental pleadings. Johnson made default; McIntosh, as Morgan's administrator and as receiver of the bank, answered, denying the allegations of plaintiff's petition and averring that all the notes and warrants referred to in the petition were at the time of Morgan's death the property of and in the possession of the bank; that plaintiff was employed by the bank and subsequently to the death of Morgan unlawfully took into his possession the notes and warrants and appropriated them to his own use. There was a trial to the court and finding for the plaintiff and a decree according to the prayer of the petition. From this decree McIntosh appeals.

Before answering McIntosh had demurred to the petition, and the first reason urged by appellants against the decree is that the court erred in overruling this demurrer. The appellant, by answering over, waived the right to have the demurrer considered as such, but, of course, if the petition did not state a cause of action the decree was erroneous and should be reversed for that reason. The only

defect in the petition suggested is that it does not allege that the bank or Morgan delivered the notes to plaintiff in pursuance of any agreement.    The petition alleges that an indebtedness had existed for a long time from the bank to plaintiff, and that it was the custom and manner of business between plaintiff and the bank for the bank to give plaintiff security from time to time, usually in the form of notes and other evidences of indebtedness; that the custom had been for plaintiff to permit the bank from time to time to withdraw from pledge such notes, substituting others therefor; that it had formerly been the custom to endorse such notes to the plaintiff, but that latterly, for fear that such indorsements might impair the financial standing of the bank, it had become the custom to deliver such notes as security without indorsement; that at the time of the death of Morgan, "there were in the hands of this plaintiff in pledge as collateral security upon the same indebtedness the following evidences of indebtedness," etc.   These averments were not very specific and the petition was probably open to a motion to make them more so, but no such motion having been made we think they were sufficient allegations, coupled with the other averments, to state a cause of action. The fair and ordinary interpretation of the language would be that the notes were in plaintiff's hands as collateral security to his debt in pursuance of a contract with the bank to that effect.

The next objection made to the proceedings is that the court refused the appellants' request to impanel a jury and try the issues thereto.   There is no merit in this objection. The constitutional provision is that the right of trial by jury shall remain inviolate. (Constitution, art. 1, sec. 6.) But this does not mean that in all cases a party has a right to have the facts determined by a jury.   The provision preserves the right to jury trial as it existed when it was adopted, but it does not create or extend such right.   There never was, and there is not now, any constitutional or statutory

37

right to a jury trial in an equitable action. (*Dohle v. Omaha Foundry & Machine Co.*, 15 Neb., 436. Section 280 of the Code provides that issues of fact arising in actions for the recovery of money or of specific real or personal property shall be tried by a jury, unless a jury trial is waived, or a reference made as elsewhere in the Code provided; and section 281 provides that all other issues of fact shall be tried by the court subject to its power to order any issue or issues to to be tried by a jury or referred. This action was not for the recovery of any specific real or personal property, nor was it in the technical sense an action for the recovery of money. The petition stated a case for equitable relief, and when a cause of action for equitable relief is stated and equitable relief is prayed a jury cannot be demanded as a matter of right for the trial of any issue in the case.

All the other arguments are directed against the admission of certain testimony. It has been frequently said that where a case is tried to the court without the intervention of a jury, the admission of improper testimony is not in itself ground for reversal. A judgment in such a case must be affirmed notwithstanding the admission of such improper evidence, unless upon the evidence properly admitted and the law applicable to the facts established thereby, the judgment was wrong. Our inquiry should, therefore, be not simply whether the evidence complained of was improperly admitted, but whether the evidence properly admitted sustained the finding of the court. From the circumstances of the case, probably, the evidence is very meager. The bank was managed by Morgan; Sharmer was employed therein. These two men transacted all the business and no one except them was familiar with the transactions in controversy. The appellant argues with much earnestness that under the circumstances Sharmer was not a competent witness. This was formerly the law. (Gen. Stats., p. 582, sec. 329; *Wamsley v. Crook*, 3 Neb.,

344.) But this section was amended (Session Laws, 1883, ch. 83,) so as not to render the person interested adversely to the representative of the deceased person incompetent as a witness, but to render merely his testimony as to transactions and conversations with the deceased incompetent as evidence, with the exceptions provided in the act. There was no evidence admitted which would be incompetent under section 329 of the Code as it now stands. Under this limitation as to the evidence, Sharmer testified that the bank was indebted to him, and supported this evidence from books kept by Morgan. He also testified that the papers in controversy were at the time of Morgan's death in Sharmer's possession in this way, that Sharmer had a box which he kept in the bank's safe and which contained nothing but his private papers, and that the notes and warrants were in an envelope in this box. The day after Morgan's death the defendant Johnson arrived in Sidney, and he, with Sharmer and several others, went to the bank and made an examination of its condition. During this examination Sharmer exhibited to Johnson the notes and warrants, and remarked to him that these were the collateral notes and warrants that Sharmer held unindorsed, and Johnson said, "That is all right, keep them." While the parties appearing admitted of record that Johnson was a partner, it is clear that Johnson did not pretend to any knowledge of the arrangement between Morgan and Sharmer, and that this remark of Johnson's cannot be taken as creating a contract of pledge, and was an admission of a past contract based solely on Sharmer's declaration to Johnson, so that to give it any weight would be to permit Sharmer to make evidence in his own favor by his own declarations. Mr. Reilly testified that he had been the attorney for the bank, and that he had acted for the bank at one time in transferring some real estate to Sharmer, and that thereafter Morgan consulted him as to whether notes could be pledged by delivery without indorsement, saying

that Sharmer and others held such security and he wanted to know its legal effect. This testimony was objected to as incompetent, and we think it was clearly so. It was a professional communication, and was incompetent under section 333 of the Code. The appellant was the representative of the client by whom the communication was made and was entitled to insist upon this privilege. All the competent evidence in favor of Sharmer, then, consists in proof of an indebtedness from the bank to him and proof that he was in possession of the notes and warrants. On the other hand, it was shown that the books of the bank disclosed no pledge or transfer of the paper, and that Sharmer's occupation was such that he had access to the safe and the papers of the bank, and that his work had consisted largely in collecting notes belonging to the bank.

In order to constitute a pledge of personal property or evidences of indebtedness, two things must concur: First, a contract whereby such property is to be held as security to a debt; and second, delivery, actual or constructive, of the pledge to the pledgee. In this case the debt was proved, possession by the pledgee was shown, but the manner in which possession was obtained was not shown, nor was there the slightest evidence of any contract of pledge. So far as the unindorsed notes are concerned, we think that there was no evidence to sustain a finding for the plaintiff. The two warrants were indorsed generally by the payee and also by Morgan as cashier, and one note made by E. V. S. Pomroy to George W. Jenner bore Jenner's general indorsement. While the warrants were not in the sense of the law merchant negotiable instruments, still, so indorsed, property in them passed by delivery. Sharmer's possession of these warrants and of the Jenner note was, therefore, *prima facie* evidence of ownership; *a fortiori*, evidence of a lesser claim. The evidence afforded by this possession was not rebutted, and we think, so far as these three instruments were concerned, the finding of the court

is sustained.   It may be said that in all probability Shar-
mer's interest was the same in all the securities in his pos-
session.   This may be true, but the knowledge of the facts
had been confined to Sharmer and Morgan.   If Sharmer's
claim was ill-founded, death had sealed the lips of the only
person who could show that fact and rebut any presump-
tion in Sharmer's favor.   On the other hand, the statute
sealed Sharmer's lips and probably prevented his establish-
ing a claim to the other papers where he was not aided by
any legal presumption.   The statute is largely founded in
public policy.   It was designed to place the parties on an
equal footing as to proof.   It was not intended to relieve
either party from the necessity of making proof, and as the
law of nature in the case of death may deprive one party
of the ability of proving facts which could otherwise be
established, so the statute in such cases may deprive the
other party of the same ability.   The decree of the district
court must be modified so as give Sharmer a lien on the
proceeds of the two warrants and of the Jenner note alone,
and to order the receiver in this case to deliver to the re-
ceiver of the bank the other notes or the proceeds thereof.

DECREE ACCORDINGLY.