MABEL RICH, APPELLEE, v. JOHN M. FULTON, APPELLANT.

FILED MARCH 13, 1920.    No. 20620.

1. **Contracts:** MARRIAGE CONTRACT: PUBLIC POLICY. A marriage contract, entered into within five years from the time that either the husband or the wife of the contracting party shall have absented himself, is void as against public policy, unless such absent husband or wife was dead or divorced. Rev. St. 1913, sec. 8768.

2. ———: ———: EVIDENCE. Evidence examined, and *held* not to show that the absent husband was dead or divorced.

3. ———: ———: FALSE REPRESENTATIONS. Representations made by the defendant that the husband of the plaintiff is dead, even though false, will not justify her in entering into a marriage contract with him within five years from the time of the beginning of the ab-

sence of her husband, unless the evidence shows that he was at the time dead.

4. **Seduction.** To constitute seduction, the female must be seduced; that is, corrupted, deceived, drawn aside from the path of virtue which she was pursuing. Her affections must be gained, her mind and thoughts polluted. Sexual indulgence, induced merely by desire to gratify passion, does not constitute seduction.

5. **Contracts:** MARRIAGE CONTRACT: PUBLIC POLICY. A promise of marriage, in consideration that the promisee should, before marriage, have sexual intercourse with the promisor, is void.

APPEAL from the district court for Pierce county: WILLIAM V. ALLEN, JUDGE. *Reversed.*

*M. H. Leamy,* for appellant.

*John W. Blezek* and *O. S. Spillman, contra.*

CORNISH, J.

From a judgment awarding the plaintiff $10,000 damages for breach of promise of marriage, induced by fraud and deceit, resulting in debauchery, humiliation, and loss of a husband, defendant appeals.

It is contended by the plaintiff that the defendant represented to her that her husband was dead, when he did not know whether he was dead or not, and that therefore he is estopped to deny that her husband was dead.

Defendant denies that he made such representation. He admits that for a period of time they lived in the same house, sustaining improper relations, and that a child was born, the result of the illicit relations.

Defendant, 56 years of age, was a farmer, a widower, living with his boy on his farm. The plaintiff, 44 years of age, married and with two children, would come to the farm to help in the household work, returning at intervals to her home. At her second or third stay at the farm the illicit relations began. At about that time she commenced an action for divorce from her husband, which was dismissed 29 months afterwards, three days before the trial of this action. A question of fact arises whether the divorce action was commenced before or after

their first act of sexual indulgence. If immediately afterwards, then she would hardly be heard to say that she was led to do the act by any representation touching her husband's death. A careful consideration of the testimony convinces us that such act was committed afterwards. We are further of the opinion that the evidence does not show that she relied upon the representation in giving her consent to sexual indulgence, or that she would have a right to rely upon the representation, if made.

Public policy will not permit a married person to enter into a marriage contract with another when his or her spouse is alive and not divorced. A contrary rule would lead to bigamy, which is a violation of positive laws. It would disturb the peace of families and offend against the decency and good order of society.

Section 8768, Rev. St. 1913, defining bigamy and providing punishment therefor, and which, as we have held, does not make intent an element of the crime, contains a provision as follows: "Nothing contained in this section shall be construed to extend to any person whose husband or wife shall be continually and wilfully absent for the space of five years together and unheard from, next before the time of such marriage."

We are of opinion that this provision states the rule of public policy. One should not remarry "for the space of five years," unless he knows that his absent spouse is dead or divorced.

Cases have arisen where a married man has deceived a woman into believing that he was unmarried, in which the courts have held that in a suit for damages the defendant is estopped to deny that he was unmarried. This is upon the theory of fraud; that the duty was upon him to know whether he was married or not, and not to deceive the other contracting party. These cases have hardly any application here, because here the duty was upon the plaintiff, in the first instance, to know whether her husband was dead before entering into another mar-

riage relation. No case is cited in which the courts have permitted the married person to recover.

Taking the plaintiff's evidence as true, it does not appear that the defendant, in his statements to the plaintiff, ever pretended to have personal knowledge that her husband was dead; he had merely heard that he was dead. She thought he told her who had informed him, but could not remember that person's name.

It would seem that a married woman, of the plaintiff's age, would know that a statement made or a promise given, in the very midst of the contention which ended in her yielding to the defendant's passionate desires, would not be altogether reliable. If it be suggested that she, too, might have been moved by passion, then the answer is that, in so far as the parties to such a transaction are induced merely by sexual desire, the law gives no right of action either in contract or in tort. The law contemplates only the seduction of virtuous women; otherwise, she is a partaker in the offense and consents to the injury. Her affections must be gained and her mind and thoughts polluted by the deception. A promise of marriage, the consideration of which is present sexual connection, is void. It would be to legalize a contract for prostitution. However, this discussion is somewhat irrelevant, because it is not seriously contended that the evidence showed that plaintiff's husband was in fact dead. Holding, as we do, that the marriage contract was itself void, it follows that plaintiff's cause of action must fail.

This conclusion does not mean that the child, born of the illicit relations, may be abandoned by its father; nor that the mother shall bear the burden of its support and maintenance. In *Craig v. Shea*, 102 Neb. 575, we held, in a suit brought by the mother as next friend of the child, that she could maintain an action in equity against the putative father to declare the child's status and recover for its support and maintenance.

For cases bearing upon the questions involved, see *Reynolds v. State*, 58 Neb. 49; *Staley v. State*, 89 Neb. 701; *Johnson v. Iss*, 114 Tenn. 114, 108 Am. St. Rep. 891; *Commonwealth v. Mash*, 7 Met. (Mass.) 472; *Davis v. Pryor*, 112 Fed. 274; *Dotson v. State*, 62 Ala. 141, 34 Am. Rep. 2; *Hanks v. Naglee*, 54 Cal. 51, 35 Am. Rep. 67; *Williams v. Igel*, 116 N. Y. Supp. 778; *Smith v. McPherson*, 176 Cal. 144, L. R. A. 1918B, 66, and note; *Paddock v. Robinson*, 63 Ill. 99; *People v. DeFore*, 64 Mich. 693; *Wilson v. Carnley*, 1 K. B. 1908 (Eng.) 729; 9 C. J. 324, sec. 6; 16 Cyc. 741.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

MORRISSEY, C. J., and ROSE, J., dissenting.

DAY, J., not sitting.