MICHAEL KRUMM, APPELLEE, v. LIZZIE PILLARD ET AL., APPELLANTS.

FILED MARCH 13, 1920.   No. 20996.

1. Jury: SUIT TO QUIET TITLE. An action to quiet title based upon plaintiff's adverse possession for statutory period calls for equitable relief, and neither party is entitled as a matter of right to demand a jury to pass upon the facts.

2. Evidence examined, and *held* sufficient to sustain the findings and decree.

APPEAL from the district court for Lancaster county: LEONARD A. FLANSBURG, JUDGE. *Affirmed.*

*R. H. Hagelin,* for appellants.

*Meier & Meier,* contra.

DAY, J.

At the time of the commencement of this action, the then plaintiff, Michael Krumm, was the record owner of

the W. ½ of the N. W. ¼ of section 29, town 8, range 6, Lancaster county, Nebraska, and the defendant Lizzie Pillard was the record owner of the W. ½ of the S. W. ¼ of the same section. A controversy arose between the parties as to whether a fence which had theretofore been constructed as a division line fence between said respective parties was on the correct boundary line. The dispute was carried to the point where the defendant undertook to remove the fence and place it back north a few feet to a point she conceived to be the true line, and which probably was the correct boundary. The plaintiff thereupon brought this action alleging in substance that for 35 years he had owned the W. ½ of the N. W. ¼ above described, together with lands adjacent thereto, and particularly all land in said section situated between the south line of the W. ½ of the N. W. ¼ of said section and the old established fence along the north end of the W. ½ of the S. W. ¼ of said section; that the plaintiff had, for more than 35 years last past, claimed and asserted the rights of ownership and possession thereof, continuously, openly, notoriously, adversely and exclusively against all persons whomsoever; that the fence as aforesaid was established by the plaintiff and one Simon Wunderlichs more than 30 years prior to the bringing of the action. The plaintiff further alleged that the defendants were seeking to interfere with his right of ownership and possession; that the defendants are threatening to take possession of portions of said land; that they have sought to have surveys made and stakes driven and holes dug, and to plow up said fence, and in other ways to trespass and encroach upon the lands of the plaintiff. The plaintiff prayed for an injunction against the defendants from in any wise molesting or interfering with him in the peaceable occupancy of said land, and for a decree quieting the title to all of said lands on the north side of said old established fence, and for such other and further relief as the court might find proper.

Before the defendants filed an answer to the petition, a motion was filed in their behalf requesting that the case be transferred to a law docket for trial by jury, for the reason that the questions of fact to be tried involved the title to real estate. This motion was overruled by the court. The plaintiff, Michael Krumm, having died, the case was revived in the name of Augusta Krumm, executrix. The defendants then filed an answer alleging in substance that Lizzie Pillard was the owner of the W. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of said section, and that she had owned said land since 1912; that during said period Michael Krumm and his children had from time to time removed said division fence and placed it further south upon the land of the defendant Lizzie Pillard. The defendants further alleged that at no time did the plaintiff claim to be the owner of the strip of land lying north of said fence, and denied that Michael Krumm for 35 years, or for any length of time, had openly, continuously, notoriously, adversely and exclusively claimed the rights of ownership and possession of said strip of land. The defendants prayed that the title to the strip of ground lying between the fence and the south line of the Krumm tract be quieted and confirmed in the defendant Lizzie Pillard, and that the said plaintiff be forever enjoined from in any wise molesting or interfering with the defendant Lizzie Pillard's peaceable and lawful ownership of said strip of ground, and for such other and further relief as the equity of the cause might require. Upon the issues thus presented, and the testimony, the district court entered a decree in favor of the plaintiff, and established the division line between said properties as near as practicable along the line of the old fence as it originally stood. The line the court established by the decree does not give to the plaintiff the small encroachments on the defendant's property made during the ownership of Lizzie Pillard, occasioned by the removal of the fence to the southward from time to time as repairs

104 Neb.—22

were made on the fence; neither does the decree follow the precise line of the old fence, but does follow it for practical purposes. The original fence varied somewhat from a straight line between given points along its course, and the effect of the decree is to straighten out these kinks. In this respect Lizzie Pillard has no ground to complain, for the straightening of the line took none of her land. From this decree, the defendants have appealed.

While this case is before this court for trial *de novo*, the defendants have particularly challenged attention to two assignments of error: First, that the court erred in overruling the defendants' motion to have the cause transferred to a law docket for trial by a jury; and, second, that the judgment and decree is contrary to the evidence, and is not supported by the evidence.

With respect to the first contention, it cannot be successfully claimed that the defendants were deprived of any constitutional right by the ruling of the court. True, our Constitution (article I, sec. 6) provides that the right of trial by a jury shall remain inviolate, but this does not mean that in all cases a party has a right to have the facts of his case determined by a jury. It is now well recognized that this provision of the Constitution preserves the right to a jury trial as that right existed at the time it was adopted, but it does not create or extend such right. *Sharmer v. McIntosh,* 43 Neb. 509. Our statutory provisions relating to this subject provide: "Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury." Rev. St. 1913, sec. 7843. "All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by a jury, or referred as provided in this Code." Rev. St. 1913, sec. 7844. The decisions of our court on this subject have established a pretty clear line of demarcation between these two classes of cases. When the action is one purely legal in its nature, the rule is that either party

ordinarily, as a matter of right, is entitled to demand a jury trial. *Olsen v. Marquis,* 88 Neb. 610; *Lett v. Hammond,* 59 Neb. 339. When the cause is for equitable relief, a jury cannot be demanded as a matter of right by either party to try any issue arising in the case. *Sharmer v. McIntosh,* 43 Neb. 509.

The only question then to be determined is whether the present action is to be regarded as a purely law action, or is it one calling for the exercise of the equity power of the court. This must be determined by the allegations and prayer of the petition. The petition and prayer clearly indicate the action to be one to quiet title, coupled with it a prayer that the defendants be enjoined from interfering with the plaintiff's possession and enjoyment. It is true the plaintiff bases his title in a claim of adverse possession, but this related to the proof by which he claimed ownership, rather than the fact of ownership. It was no necessary part of his cause of action. His cause of action could have rested on an allegation of ownership, which could be established by proof of adverse possession or by a record title. If the object which the plaintiff had in view by this suit could be construed to be an action in ejectment, then it would clearly be an action at law, and the defendant would be entitled to a jury trial. The basis for an action in ejectment is the unlawful possession of the premises by the defendant, but in this case the plaintiff was in possession of the premises, and hence there was no basis for an action in ejectment. The action being one to quiet title, coupled with an application for injunction, presents a case calling for equitable relief, notwithstanding the fact that the plaintiff's title is based on a claim of adverse possession. After the defendants filed their answer, no application was made for a jury trial under the issues presented by the answer, and even if it were conceded that the answer presented an issue triable to the jury, which we are of the opinion that it did not, they waived it by not again asking for a jury trial.

The second assignment of error involves a consideration of the evidence in the case. It would be of little value to the litigants, and none to the profession, to go into anything like a complete analysis of the evidence. Suffice it to say that some 30 years ago one Simon Wunderlichs, a predecessor in title of the defendant, constructed the fence in question. At the time, he made no survey, but followed his best judgment as to where the line was, based upon fences elsewhere constructed in the section of land, and such monuments as he was able to locate. Both plaintiff and Wunderlichs assumed the fence marked the true boundary of their respective farms, and no question as to boundary was ever raised between them. The plaintiff farmed and used all of this strip continually during all these years, and by outward acts, so far as outward acts can do so, proclaimed his ownership and claim to the land. It was not necessary that he should give notice of his intention otherwise than as he did. *Horbach v. Miller,* 4 Neb. 31; *City of Florence v. White,* 50 Neb. 516. Appellants recognize the force of this rule, and seek to avoid its effect by arguing that this presumption arising from the outward manifestation of ownership is overcome by the declaration of the party in possession that his holding is not adverse to the true owner. This is a correct statement as a principle, but in our judgment the facts of this case do not call for the application of this rule. The plaintiff's title by adverse possession was complete long before Mrs. Pillard acquired the title. During her occupancy, the plaintiff moved a small portion of the fence to the southward, and this encroachment brought forth a remonstrance from Mrs. Pillard. At that time neither she nor the plaintiff knew that the fence did not mark the true boundary. Witnesses for the defendant testified that the plaintiff stated that he did not want any of the defendant's land, that all he wanted was his own, and that he would move the fence back. Under all the circumstances, we cannot but believe that

Krumm v. Pillard.

what the plaintiff had in mind in his statement was to move the fence back from the recent encroachment. The survey disclosed that the Wunderlichs fence was not on the true boundary. At the extreme west end it was six-tenths of a foot north of the correct line, and at the extreme east end was south of the true boundary 6.8 feet. A very slight calculation discloses that the amount of land in this strip is less than one-twelfth of an acre.

From an examination of the entire testimony, we are convinced that the plaintiff has been in the open, notorious, exclusive, continuous, adverse possession of the strip of land in question for more than the statutory period of 10 years, and that he was entitled to the decree granted. The decree of the district court did not include the small portions which were covered by the more recent encroachments of the plaintiff upon the defendant's land.

The decree of the district court is

AFFIRMED.

CORNISH, J., dissenting.

When, as here, the person occupying another's land never intended to assert any but his legal rights, and the owner of the land also supposed that such was not his intention, I see no good reason for calling such possession adverse possession. It does not seem to me that it can be called adverse, because the occupant, as an honest man, would always be willing to change his fence if it was not upon the dividing line. The true owner is entitled to some notice that the possession is actually adverse. I am of opinion that our former holdings to the contrary should be reversed, at least in cases where no right, based upon estoppel, has arisen.