Grace L. Sanctuary 
vs. } No. 68169. 
Edwin F. Cary

February 27, 1930.

POULIOT, J. This is an action brought by Grace L. Sanctuary to recover damages for breach of a promise to marry her alleged to have been made to her by Edwin F. Cary. After a trial before a jury occupying eleven trial days and resulting in a verdict for the plaintiff in the sum of $15,000. the defendant moved for a new trial on the usual grounds.

The matter of damages can be disposed of very readily. If the plaintiff is entitled to a verdict, the award made by the jury in this case is clearly not excessive on the evidence presented.

The troublesome question is: Has the plaintiff by a fair preponderance of the evidence established her right to recover? The plaintiff and defendant became acquainted with each other in January, 1923, when, in answer to his letter of January 26, 1923, she called at his office and was engaged to come into his employ on the following Monday as a substitute stenographer. At that time both parties were married and undivorced. That fact was known to the man April 15, 1923, the day the plaintiff claims defendant proposed marriage to her at his camp, Port of Missing Men, and offered her a trip around the world as his wife. Mrs. Cary had previously instituted a suit for divorce in which the preliminary decree was entered on April 5, 1923, and the final decree was entered on April 1, 1924. Mrs. Sanctuary instituted proceedings against her husband in which preliminary and final decrees were entered respectively on January 2, 1924, and July 7, 1924.

The plaintiff sets out various dates on which she claims the defendant promised to marry her, beginning with April 15, 1923, and running into November, 1924, all of which claims the defendant denies.

The defendant was not free to marry until April 1, 1924, and the plaintiff was also incapable of entering into the marriage relationship until July 7, 1924, so that prior to these dates the parties were legally incapable of making an agreement to marry.

"A promise by a married man to marry when a divorce should be decreed between himself and his wife in a suit then pending is contrary to public policy and void."

*Noice* vs. *Brown*, 39 N. J. L. 133.

"Public policy will not permit a married person to enter into a marriage contract with another when his or her spouse is alive and not divorced. A contrary rule would lead to bigamy which is a violation of positive laws. It would disturb the peace of families and offend against the decency and good order of society."

*Rich* vs. *Fullon*, 104 Neb. 262.

"Only in the most corrupt condition of society could such agreements be tolerated. They are in themselves a violation of marital duty and the persons who make them are wholly unfaithful to the marriage tie."

*Paddock* vs. *Robinson*, 63 Ill. 99.

The law seems to be so well settled on such contracts that further citations would be but constant repetition. In order, therefore, that the plaintiff be entitled to recover, she must prove that subsequent to July 7, 1924, there was a new promise to marry—a promise which did not depend upon the one she claims was made on April 15, 1923.

The plaintiff was on the witness stand some two days, was examined with minute detail by her own counsel and by defendant's counsel. She left the stand with her story presumably complete. She had created an impression of unusual intelligence and cleverness, had skilfully matched wits with an astute cross-examiner, and had built up what appeared to be a strong case, but when all the testimony up to that point is analyzed, it is found that all the incidents referred to had taken place prior to July 7, 1924. She had also testified in her cross-examination that all the proposals enumerated by her referred back to the one made on April 15, 1923. Following the plaintiff's testimony eight witnesses

testified, that is: Ethel Richardson, Viola W. Farr, Harriet Sanctuary, Jane Sanctuary, John Finley, Jr., Linn M. Carpenter, Elizabeth O'Keefe, a former court stenographer, and John J. Richards, Esq., in the order named. While the last named witness was on the stand an adjournment was taken to the Court's chambers, to determine a point which had arisen concerning his testimony. During the conference the Court suggested that counsel assist the Court in determining the law involved in the case, as the Court's search of the authorities up to that point indicated that a contract of the nature involved must have been made at a time when both parties were legally competent to marry in order to be enforced. On returning to the court room, the plaintiff was recalled and testified in direct examination that she was relying on the promise alleged to have been made on July 25, 1924, and not on the alleged promise of April 15, 1923. If this evidence had been undisputed it would be entitled to stand, but having been forcefully contradicted, its truth is held to be doubtful, and to have been given to surmount an undeniable obstacle to recovery.

*Cooke, Borden & Co., Inc.*, vs. *R. Z. L. Realty Corporation*, 50 R. I. 375.

In direct examination, on being recalled, plaintiff testified of repeated promises on four dates and, on cross-examination, when asked:

"Q. Just one or two questions, Mrs. Sanctuary. Whether it was on the 26th day of July, 1924, or September 7, 1924, or September 27, 1924, or November 26, 1924, that Mr. Cary spoke of marriage to you, you went back to the promise which he had made at the camp on Sunday, April 15, 1923?

A. I did not go back to that proposal of April 15, because at that time there was an understanding between us that when we were both

legally divorced that he would repeat his proposal and give me a ring, and then he would make arrangements to go around the world. and it was the proposal of July 28, 1924, that I relied absolutely on, because that was the time that we were both absolutely free and we could make final arrangements to go around the world."

It seems to the Court that there can be but one interpretation of this answer: that on April 15, 1923, the parties agreed that a proposal would be repeated after the parties had been divorced. Assuming that a proposal was made on July 26, 1924, it was carrying out the agreement that had been made on April 15, 1923, when neither party could legally make such an agreement. It is not a new proposal separated from the old illegal agreement, but, on the contrary, an attempt to carry out the understanding of the prior void agreement which, from its nature, cannot be ratified by some subsequent action.

*Noice* vs. *Brown. supra.*

This Court is of the opinion that an analysis of the evidence of the conversation on which the plaintiff relies shows that the jury misconceived its duty and that, therefore. substantial justice not having been done, the defendant is entitled to a new trial.

Motion for a new trial granted,

For plaintiff: John P. Beagan.

For defendant: Cooney & Cooney.