DORIS RYAN, APPELLEE, V. PAUL OSWALD, APPELLANT.
278 N. W. 508

FILED MARCH 18, 1938. No. 30195.

*Craft, Edgerton & Fraizer* and *H. G. Wellensiek,* for appellant.

*Prince & Prince, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, CARTER and MESSMORE, JJ., and WILLIAM A. DAY, District Judge.

GOSS, C. J.

Defendant appeals from a judgment for $10,000 against him.

The second amended petition, upon which the case was tried, sets up two causes of action for damages against defendant; one based on breach of promise of marriage and the other based on seduction under a promise of marriage.

The first cause of action alleged that both parties were over 18 years of age and had been keeping company for several months before May 23, 1933; that on said date defendant asked plaintiff to marry him and she accepted; that he promised to marry her and they were engaged to marry from the date named until about April 27, 1936; that from May 23, 1933, to March 18, 1934, defendant continually sought to seduce plaintiff under his promise of marriage and did finally carnally know her on or about March 18, 1934; that she was a chaste woman and had never had intercourse prior thereto with any man and that their relationship continued until about April 27, 1936, about which time defendant refused and has since continued to refuse to marry plaintiff and has breached his promise of marriage, to the damage and injury of the reputation, social standing and ability of plaintiff to support herself, for which damages she prays judgment.

The second cause of action is based upon substantially the same facts and prays damages for the seduction.

Defendant moved to require plaintiff to elect upon which count she would go to trial; one being said to be upon contract and the other for a tort. The overruling of this motion is assigned as error. Section 20-701, Comp. St. 1929, authorizes a plaintiff to unite a cause of action grow-

ing out of a breach of contract of marriage and another in damages for seduction where both causes arise out of the same transaction. 1 C. J. 1086; 1 C. J. S. 1255.

Defendant pleaded that the parties became engaged in October, 1933, but that no date for their marriage had ever been set. He alleged that on February 16, 1936, he noted serious mental delusions of plaintiff, that on February 22, 1936, she became mentally unbalanced and demented, and that this insanity grew constantly worse so that on February 24 a nurse was called to care for her, and on March 7, 1936, she was taken to Omaha and placed in a hospital under the care of a specialist, where she remained until April 24, 1936, when defendant brought her home; plaintiff's parents being without funds, defendant paid the doctors, nurses and hospital bills; that her parents filed an insanity information against her, she was adjudged insane and was taken to a sanitarium at Lincoln, where she remained incompetent and insane until about September 9, 1936; that until plaintiff became insane defendant had no thought but that they would marry, that the only time she suggested that they marry he told her he was not financially able to support her and she acquiesced and agreed with him, and that she frequently, when in her right mind, stated that she wanted to teach until 1938, before getting married; that defendant did not seduce plaintiff and never had sexual intercourse with her; that if her reputation for chastity has been impaired it has been brought about by her own statements or through the statements of her parents and relations and never by any statements of defendant; that after plaintiff's return from the hospital at Omaha, on April 24, 1936, up to May 10, 1936, defendant called on plaintiff seven times and on most of these occasions her mind was a total blank; defendant saw her on April 26 and April 28, 1936, and on neither occasion was marriage discussed between them; that about May 10, 1936, defendant stopped calling on plaintiff and did so because of the mental incompetency of plaintiff and because on May 6, 1936, her sister, having similar delusions, was

adjudged insane and was committed to the state hospital at Ingleside; that plaintiff never made any demand on defendant to marry her, that he never refused such a demand, that at all times from February 16, 1936, until May 10, 1936, when defendant stopped calling on her, she was insane and incompetent to enter into a marriage relation, and that by reason thereof and the insanity in her family defendant is released from his previous engagement to plaintiff. Defendant denies every allegation of the first and second causes of action not admitted by the answer.

The reply of plaintiff denies all allegations ·of new matter in the answer; alleges that her mental breakdown of February 22, 1936, was caused solely and only by worry over the fact that she believed she. was pregnant by defendant and over the fact that defendant would not marry her, that she would lose her position as a teacher, that her reputation would be destroyed, and that under such circumstances defendant would not carry out his. agreement to marry her; that the same things caused such a shock to her sister Beulah as to make her suffer temporarily a similar mental breakdown, but that the sister was confined only a few weeks and then was discharged as permanently cured; and that plaintiff is completely cured and has been perfectly normal since September 9, 1936.

Plaintiff and defendant were a country girl and boy, more than 18 years of age when they became engaged and about 21 at the time of trial. She was a school-teacher and he lived with his parents and helped to do the work on his father's farm. He admits the engagement and promise to marry and seeks to justify the breaking off between them because of her mental disturbance and his claim that there was insanity in her family. His testimony denies that he ever had sexual intercourse with her. She testified that for nearly a year after they became engaged he pleaded for sexual intercourse and that she finally yielded and they pursued that relation from some time in 1934 to January or February, 1936. She thought she was pregnant because she had overrun her period for about three weeks.

On February 21, 1936, her father sent for him and a family conference was held at her home. While he was not directly accused, he testified that plaintiff said: "You know what is wrong. I says: 'No; I don't.' And she said: 'Are you going to be a man.' And then her dad * * * says: 'I know what is wrong with her. * * * You take her and marry her and I will like you as well as I ever did.'" He testified that he did not answer the father. The evidence shows that on that night he took her to the house of his cousin, who was married to her sister. The next morning the four started out with the plan of being married at Grand Island or Hastings. Defendant stopped at his parents' home to change his clothes and then suggested that they go to Grand Island to see a doctor. The two girls went in to see a doctor at the hospital. They came out and reported that the doctor could not tell whether she was pregnant or not. They all went home and that night plaintiff and defendant started to Grand Island to get some medicine that the doctor had suggested, but on the way plaintiff refused to get the medicine. She testified that he said: "He couldn't get married now, because he didn't have any money."

Plaintiff and defendant both agree that she suffered a mental breakdown on February 22, 1936. Defendant took her to a hospital in Omaha March 7, 1936, where she remained several weeks. Defendant paid the bills and was attentive in his calls and correspondence. Later she was taken to Green Gables in Lincoln for treatment and evidently was cured of her mental troubles which she claims were brought about by worry over the belief that she was pregnant, and aggravated by his refusal on February 22, 1936, to marry her.

While she was in the Omaha hospital, defendant wrote her a letter, dated March 8, 1936, in which he said: "I am sorry for all the trouble I have caused you, more sorry than I will ever be able to tell you. Honey, if you will forgive me, I will feel so much better and some day we'll be happy together." When on the stand defendant testified

that the reason why he refused to marry plaintiff was that she had been insane ever since February 16, 1936. While it is true that, in the family conference heretofore referred to, the father did not expressly charge defendant with seducing his daughter, there was sufficient for the jury to infer the meaning of the conversation to defendant and his understanding of it. There was ample evidence, if believed by the jury, to prove the promise of defendant to marry, his seduction of plaintiff under the influence of that relation and his breach of the promise.

Defendant asks relief from his contract to marry on the ground that plaintiff had become mentally incompetent. A somewhat similar situation arose in *Fellers v. Howe,* 106 Neb. 495, 184 N. W. 122. There defendant had alleged that plaintiff was afflicted by a disease that rendered her unfit for the marriage relation. The trial court had given an instruction which was attacked and was criticized in the opinion, but was held not so prejudicially erroneous as to require a reversal. In discussing the rule the opinion said: "We think the better rule in such case is something like this: Where disease or physical disability rendering it unsafe or improper to marry has developed in either party to the contract, without intervening fault on the part of the other, subsequent to the making of the contract and before its consummation by marriage, such other party will be required to wait a reasonable time for a cure to be effected, and if such disease or disability proves to be of a permanent character, may refuse to carry out the contract. See 9 C. J. 339, sec. 31, and cases cited."

The evidence in the case at bar seems to indicate that plaintiff's mental disturbance was only temporary and was caused by the shock of defendant's conduct in being unwilling to marry her on or about February 22, 1936, in the state in which she believed herself to be on account of her relations with him. She carried on her suit in her own name. She testified at length. There is nothing in the evidence to lead to any other conclusion than that she was cured of any mental trouble. At the time of the trial she

was a freshman at college, partly working her way. Whether his refusal to marry plaintiff occurred in February or in April or May of that year is unimportant. While he was attentive to her and paid her bills at the Omaha hospital, it is apparent from the evidence that, after a date early in May, 1936, he ceased all personal attentions to her, and the evidence was sufficient for the jury to conclude that he had decided to break the contract some time in the first half of 1936. The jury might well have concluded from the evidence that there was no family insanity and that she had recovered in the fall of 1936 from a temporary mental breakdown, caused by the shock of his attitude.

Rulings of the trial court on the admission of evidence are assigned as error. Defendant was not allowed to cross-examine plaintiff as to whether she was pregnant on February 21, 1936, just after she had answered on cross-examination that she thought on that date that she was pregnant. When objection was sustained to this question on the ground that it was immaterial, defendant offered to show by plaintiff "that on February 21, when she thought she was pregnant, she was not pregnant." The offer was rejected. While we think the question might well have been allowed to be answered by plaintiff, yet we think there was no prejudicial error in the ruling, because plaintiff had already answered on cross-examination that she came around and had her period within the next week after February 22. This answer stands in the record. There is no claim in the pleadings or in the evidence that she was ever pregnant—she merely thought she was because so long a time had elapsed between her periods.

Another claim of error rests in the trial court's refusal to allow a large number of letters, 25 in all, to be admitted in evidence. These letters were all written to plaintiff by defendant. Previously, on behalf of plaintiff, there had been offered, and it had been received in evidence, one part from a letter, written by defendant to plaintiff at the hospital March 8, 1936, as follows: "I have resolved to do my

best to be the kind of a fellow you want me to be. I am sorry for all the trouble I have caused you. Honey, if you will only forgive me, I will feel so much better and some day we'll be happy together." When that part was offered and received, defendant offered the rest of the letter and it too was received. Later plaintiff was made defendant's witness and defendant sought to introduce the other letters she had received from defendant while in the hospital. They were excluded as immaterial and self-serving. None of them sought to explain or modify the statement quoted from the letter admitted in evidence. As we understand the evidence, she wrote him only once or at most twice while she was in the hospital, while he wrote her almost daily. We find no letter from her to him in evidence.

It is argued by defendant that plaintiff was not seduced, that she deliberately entered into and continued in this course of illicit love that lasted two years. The brief cites 57 C. J. 12: "Illicit or unlawful intercourse does not of itself constitute seduction. Mere reluctance on the part of the woman to commit the act is not sufficient to entitle her to recover." Another part of that same section says: "The essential elements of her cause of action is the act of seduction itself, which can be accomplished only by per-suasion, flattery, deceit, false promises * * * on the part of defendant, by reason of which she is induced to yield to sexual intercourse." On this point defendant also cites *Rich v. Fulton*, 104 Neb. 262, 177 N. W. 175. That decision does not apply to the facts here because the woman there was a married woman who had brought an action for divorce from her husband but had not secured the divorce. It was held to be against public policy for her to enter into a contract of marriage unless her husband was divorced or dead; and in effect it was held that she was not seduced, but that her sexual indulgence was merely to gratify passion.

"Specifically, seduction is the act of inducing a woman to consent to unlawful sexual intercourse, by enticements which overcome her scruples." 57 C. J. 9.

Instruction No. 4 by the court is assigned as erroneous in part. That was a long instruction, consisting of four paragraphs, the first two reciting the findings that would justify the jury in rendering their verdict for defendant on the two causes of action. The third paragraph told the jury, if they found that plaintiff's mental derangement was due to defendant's refusal to carry out his promise to marry her when she believed she was pregnant, and that worry and the shock of the realization of the position she was in brought about her mental condition, then such mental derangement of plaintiff need not be justification for defendant's refusal to marry her, and their verdict should be for plaintiff on her first cause of action.

Then the court further told the jury in the same instruction that, if they found defendant did have sexual relations with plaintiff "as a result of his promises to marry her," then the verdict should be in favor of plaintiff on her second cause of action, notwithstanding they may also find her mental derangement was not caused by any act of defendant.

Defendant criticizes this instruction particularly because of the expression "as a result," saying there is no evidence that this could be as a result of his promise to marry her, that the evidence shows she yielded to him because she thought she would otherwise lose his love, that this was out-side the evidence, and the like. It seems clear that the jury were not misled by this and that there was ample evidence to justify them in finding that the seduction took place because she yielded to his desires relying on his promise to marry her and because she felt she would lose his love if she did not so yield.

Defendant argues that insane people are not permitted to marry in this state, and that, if insanity appears in one party after the promise is made, it excuses the other. Granted, but this is not such a case and it was submitted on other issues. Then, too, plaintiff very evidently had only a temporary mental derangement, which the jury thought, apparently, under the evidence, had been brought

about by defendant's conduct. She had recovered in September, 1936, but defendant's love had cooled.

There are various other assignments of error. We have examined them and find they are not meritorious save that as to the excessiveness of the verdict.

The evidence as to specific damages to plaintiff is rather meager. Of course, damages are inferable from seduction of a chaste young woman, but the consequential damages arising out of the loss of her position as a teacher and of the publication of the fact of her seduction are not proved as facts but left to the jury also to infer from the evidence. Considering the whole case, we think the recovery is excessive, but not as the result of passion or prejudice, but rather as the result of too high an estimate by the jury. "Where the only reversible error appearing in the record is that the amount of the recovery is excessive, but not as the result of passion and prejudice of the jury, the court will affirm the judgment upon the excess being remitted." *Fellers v. Howe*, 106 Neb. 495, 184 N. W. 122.

We are of the opinion that justice will be subserved by a reduction of the judgment to $6,000. The order will therefore be that, if within 20 days from the releasing of this opinion plaintiff will file a remittitur of $4,000, the judgment so reduced will be affirmed for $6,000; otherwise, the judgment will stand reversed and a new trial ordered.

AFFIRMED ON CONDITION.

CARTER, J., and WILLIAM A. DAY, District Judge, dissent.