DAVE KUHLMAN, APPELLEE AND CROSS-APPELLANT, V. EDWARD A. CARGILE ET AL., APPELLEES AND CROSS-APPELLEES, IMPLEADED WITH MOLLY LIND, APPELLANT AND CROSS-APPELLEE.

262 N. W. 2d 454

Filed February 22, 1978.   No. 41322.

Robert M. Brenner, for appellant.

George A. Sommer, for appellee Kuhlman.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

Dave Kuhlman, appellee and cross-appellant herein, initiated this action in the District Court for Scotts Bluff County to declare a constructive or resulting trust with respect to certain property held by defendants Molly Lind, and Fern and Edward A. Cargile. The property in question consisted of Lot 2, Block 6, in the Swedell Subdivision of Scotts Bluff County, hereinafter referred to as "Lot 2," including a house which was built on the south 140 feet of Lot 2, and household goods within the house. Defendant Molly Lind held legal title to the south 140 feet of Lot 2, and the Cargile defendants held legal title to the remainder of Lot 2. The defendants denied the allegations in the petition, and also alleged that plain-

tiff's claim was barred by estoppel, laches, fraud, and misrepresentation. Defendant Lind filed a counterclaim against the plaintiff, alleging that she was entitled to damages as a result of plaintiff's breach of promise to marry her.

Defendant's request for a jury trial was denied by the trial court on the ground that the action was one in equity. After trial to the court, the District Court found that plaintiff was entitled to have a constructive trust declared with respect to the real property to which defendant Lind held title, and with respect to certain household goods contained in the house on that property. The court determined that Molly was entitled to certain personal property, and to a set-off of $9,000. Plaintiff's claim against the Cargile defendants was dismissed. The trial court also found that the plaintiff had breached a promise to marry Molly, but that she had not proven damages therefrom.

Defendant Lind has appealed to this court. The assignments of error which she discusses in her brief are, in summary, that the trial court erred (1) in refusing to grant her a jury trial; (2) in finding that a constructive trust should be declared for the benefit of the plaintiff with respect to that part of the property in question; and (3) in failing to award her damages for plaintiff's breach of promise to marry her. Plaintiff has cross-appealed, contending that the trial court erred in awarding defendant Lind a set-off of $9,000, and in dismissing his claim against the Cargile defendants. We affirm the judgment of the District Court.

We summarize the relevant facts in this case as follows. The plaintiff, who was 63 years of age at the time of trial, was divorced from his first wife in 1971 after a marriage of almost 40 years. He is a man with little formal education, and with a limited ability to read and write. He was a close friend of all the defendants for more than 25 years prior to

1971. Molly Lind is Fern Cargile's mother, and Edward Cargile's mother-in-law. The plaintiff and Edward Cargile have engaged in business dealings over the years, and at various times the plaintiff has loaned money to Cargile.

After his divorce in 1971, the plaintiff began to keep company with Molly, who is approximately the same age as the plaintiff, and he eventually lived with her. When plaintiff decided that he would build a new home, Edward Cargile suggested that the house be constructed on a lot owned by him. In May 1972, a building permit was obtained by Cargile for construction on Lot 2, referred to above. The permit indicated that it was "for Dave Kuhlman." The lot in question was one of two adjacent lots owned by the Cargiles.

There was a conflict in the testimony with respect to the intentions of Cargile when he told the plaintiff to build on the lot. The plaintiff testified he believed that Cargile was giving him the lot because of past favors and loans the plaintiff had made to Cargile, although plaintiff acknowledged that he and Cargile had no express agreement regarding substitution of the lot for debts owed to plaintiff by Cargile. Cargile testified that he was making a gift of the lot to Molly and the plaintiff because they were planning to marry. The evidence is undisputed, however, that at the time construction of the house was commenced, title to the lot remained in the Cargiles, and none of the parties concerned themselves with legal title to the property because they were on amiable terms.

On October 17, 1972, before the house was completed, the south 140 feet of Lot 2 was deeded to Molly by the Cargiles, the deed reciting a consideration of $1. The defendants testified that at the time the property was deeded, they discussed the matter with the plaintiff, who allegedly told them to put the title in Molly's name as he had "never had it so

good." The plaintiff denied this, stating that he knew nothing about the deed, and that he had paid no attention to legal title of the property.

The house was completed in December 1972, or January 1973. The Cargiles and their daughter assisted in the building of the house, and the plaintiff made some payments or gifts to the Cargiles in return for their work, although at least some of the work was done voluntarily and without expectation of compensation. The plaintiff, in large part, paid for the materials and labor involved in construction of the house. Voluminous evidence was introduced with respect to Molly's monetary contributions to the building of the house. There is no need to review this evidence. Construing it most favorably to Molly, her contribution in money was between $3,000 and $4,000. Plaintiff's contribution in money was in excess of $21,000.

The plaintiff and Molly moved into the house after its completion. The plaintiff paid the insurance and taxes on the house and property, and also paid most of the living expenses of the couple. No dispute arose concerning the property until 1975, at which time the plaintiff attempted to obtain a loan from a bank and to use the house as collateral. The plaintiff stated that it was at this time he became aware the lot had been deeded to Molly, and not to him. He testified Molly refused to permit the property to be used as collateral for the reason that she considered the house to be hers. Shortly thereafter, plaintiff filed this action. During this time, Molly had remained in the house and paid the insurance and taxes on the property. The parties stipulated the value of the house and lot was approximately $36,000 at the time of trial.

There was also evidence at trial that the plaintiff had promised to marry Molly at various times in 1971 and 1972, and that the marriage was to occur after the house was completed. The plaintiff denied

this. Molly testified that she suffered the loss of friends, ill health, and a lower standard of living as a result of plaintiff's breach of promise to marry her, although little evidence was adduced to support these assertions.

There was evidence that almost all of Lot 2, and not only the south 140 feet of that lot, had been improved by the installation of a sprinkler system and by sodding. Title to the northern part of Lot 2, excluding the south 140 feet which had been deeded to Molly and on which the house had been built, had been retained by the Cargiles.

The trial court found that the plaintiff had contributed $24,000 in labor and materials to construction of the house, and that Molly's contributions in material, labor, and maintenance was $6,000. The court found the property had appreciated in value by $6,000 since the construction of the house, and that this appreciation in value should be shared equally by plaintiff and Molly. The court determined that a constructive trust should be declared in favor of the plaintiff with respect to the south 140 feet of Lot 2, but that he should pay Molly a total of $9,000 as a set-off, whereupon she was ordered to convey the real property to him. The court also found that Molly was the owner of certain personal property which was located in the house, and that the plaintiff was entitled to other personal property such as a refrigerator and a television set. The trial court found no basis to declare a constructive trust in favor of the plaintiff with respect to the portion of Lot 2 not deeded to Molly by the Cargiles. It therefore dismissed plaintiff's claim against the Cargiles. Finally, the District Court concluded that the plaintiff had breached a promise to marry Molly, but that she had failed to prove damages therefrom.

The first issue is whether Molly was entitled to a jury trial in this case as a matter of right. Molly contends that she was, relying on Article I, section 6,

of the Constitution of the State of Nebraska, which provides that the right of trial by jury shall remain inviolate; and on section 25-1104, R. R. S. 1943, which provides that issues of fact arising in actions for the recovery of money or of specific real or personal property, shall be tried by jury unless a jury trial is waived. Molly argues that the nature of plaintiff's claim was legal, that the defenses and counterclaim were legal in nature, and that equitable relief was improper because plaintiff requested a legal remedy, or had an adequate remedy at law.

Her arguments are not persuasive. The rule is that when a cause of action for equitable relief is stated, and when the plaintiff prays for equitable relief, a jury trial cannot be demanded as a matter of right by the defendant. See, State Securities Co. v. Corkle, 191 Neb. 578, 216 N. W. 2d 879 (1974); Krumm v. Pillard, 104 Neb. 335, 177 N. W. 171 (1920); Sharmer v. McIntosh, 43 Neb. 509, 61 N. W. 727 (1895). Even if the defendant pleads legal defenses or a counterclaim for damages he is not entitled to a jury trial, as when a court of equity acquires jurisdiction over a cause for any purpose it may retain the cause for all purposes and proceed to a final determination on all matters put in issue in the case. Hull v. Bahensky, 196 Neb. 648, 244 N. W. 2d 293 (1976). It is the general rule that if a court of equity has properly acquired jurisdiction in a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation. See, Sechovec v. Harms, 187 Neb. 70, 187 N. W. 2d 296 (1971); Ready Sand & Gravel Co. v. Cornett, 184 Neb. 726, 171 N. W. 2d 775 (1969).

Actions to declare a resulting or constructive trust are in equity. See, Marco v. Marco, 196 Neb. 313, 242 N. W. 2d 867 (1976); Carey v. Humphries, 171 Neb. 578, 107 N. W. 2d 20 (1961); Restatement, Resti-

tution, § 160, p. 640. Plaintiff's action in this case was to declare a resulting or constructive trust with respect to property held by the defendants, and therefore the action was clearly in equity. The defendants did not plead or attempt to show that plaintiff's claim for equitable relief should be denied because he had an adequate remedy at law. It is apparent the contention that a jury trial should have been granted is without merit.

The second issue is whether the evidence was sufficient to establish a constructive trust for the benefit of the plaintiff with respect to property held by defendant Lind. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. Campbell v. Kirby, 195 Neb. 610, 239 N. W. 2d 792 (1976). A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his acquisition or retention of the property would constitute unjust enrichment. See, Jenkins v. Jenkins, 151 Neb. 113, 36 N. W. 2d 637 (1949); Restatement, Restitution, § 160, p. 640; Nelson v. Rasmussen, 164 Neb. 274, 82 N. W. 2d 418 (1957). "A constructive trust is imposed to do equity and to prevent unjust enrichment." Vogt v. Town & Country Realty of Lincoln, Inc., 194 Neb. 308, 231 N. W. 2d 496 (1975). Each case involving the existence of a constructive trust is to be determined on the peculiar facts, circumstances, and conditions presented therein. Jenkins v. Jenkins, *supra.*

The situation in the present case is somewhat unusual, and is not one involving outright fraud or misrepresentations on the part of the defendants. In reviewing the evidence, however, we conclude that the imposition of a constructive trust for the benefit of the plaintiff with respect to the south 140 feet of Lot 2, and the house built thereon, is warranted to pre-

vent unjust enrichment on the part of Molly. The record establishes that the plaintiff was a man unfamiliar with real estate conveyances, and that he placed trust and confidence in both Molly and the Cargiles with respect to the property in question. The lot was of relatively little value, approximately $600, prior to the plaintiff expending the funds to construct the house and improve the premises. The vast majority of the funds required to construct the house were supplied by the plaintiff. The evidence does not support the view that the plaintiff intended the house be a gift to Molly, or that he and Molly had an agreement to jointly share the property. Both Molly and Edward Cargile were aware of plaintiff's trust and confidence in them. Under the facts of this case, as revealed by the record, we believe Molly would be unjustly enriched if we were to deny plaintiff relief and permit Molly to retain legal title to the south 140 feet of Lot 2.

It is also true, however, that Molly made contributions toward the construction of the house. Although the exact value of her contributions may be subject to dispute, the trial court's resolution of this issue appears to be fundamentally fair. The evidence supports the view that Molly contributed approximately $6,000 in money, labor, materials, and maintenance, and also supports the trial court's finding that the property appreciated in value by approximately $6,000 after the house was finished. We believe that division of the appreciated value between plaintiff and Molly was just under the circumstances, and that the total set-off of $9,000 was proper. Finally, the evidence supports the trial court's findings with respect to the personal property involved in this case. The result reached by the trial court, which we approve, was equitable under the particular facts of this case, and we find nothing in the record which persuades us to reach conclusions different from those reached by the District Court.

We also agree with the District Court that the evidence was insufficient to warrant the imposition of a constructive trust with respect to the portion of Lot 2 to which the Cargiles held title. The evidence shows that Edward Cargile never intended that this real estate be used for construction of, or in connection with, the house built by plaintiff. Plaintiff produced no clear and convincing evidence that unjust enrichment will occur if the Cargiles retain the property. Although the plaintiff did expend funds to improve this property by sodding part of it and installing a sprinkler system, we do not believe this fact warrants the imposition of a constructive trust.

The final issue is whether the trial court erred in failing to award Molly damages for plaintiff's breach of promise to marry her. In awarding compensatory damages for breach of promise to marry, the trier of fact may consider the injury to the plaintiff's health, the effect of the breach on the plaintiff's feelings, mental suffering, wounded price, humiliation, pain, and mortification. Harsche v. Czyz, 157 Neb. 699, 61 N. W. 2d 265 (1953). Loss of the pecuniary benefits of the promised marriage has also been held to be an element of damages, and evidence of the wealth of the defendant is admissible to show such loss. See, Fellers v. Howe, 106 Neb. 495, 184 N. W. 122 (1921); Stratton v. Dole, 45 Neb. 472, 63 N. W. 875 (1895); Annotation, Breach of Contract to Marry — Damages, 73 A. L. R. 2d 553, § 5, at p. 561. The wealth of the defendant, however, does not establish the measure of damages. See, 11 C. J. S., Breach of Marriage Promise, § 42, p. 811; Annotation, 73 A. L. R. 2d at 564.

Without reviewing the evidence in detail, we conclude it was not of such quantity or convincing nature to establish that the breach of promise to marry resulted in ill health, mental suffering, pain, or humiliation. Molly complains that the trial court excluded evidence with respect to plaintiff's financial

condition because it sustained an objection to a question regarding his income in 1976. The trial court did, however, receive in evidence plaintiff's income tax returns for the years of 1973 and 1974, and testimony with respect to his income in 1975. We do not believe the trial court abused its discretion in limiting such evidence. Plaintiff's income, as reported on his tax returns in 1973 and 1974, was approximately $5,000 each year. The evidence, with respect to plaintiff's financial situation, was sufficient to permit the trial court to make a determination to the extent that issue was relevant.

In an action for breach of promise to marry there are no precise rules for measuring damages, and the amount of recovery should be left to the sound discretion of the trier of fact. Musselman v. Barker, 26 Neb. 737, 42 N. W. 759 (1889); Annotation, 73 A. L. R. 2d, § 2, at pp. 557, 558. In the present case it cannot be said that the trial court abused its discretion on this matter. This case is unlike prior Nebraska cases involving awards of damages where, for example, seduction and possible deceit were present. See Ryan v. Oswald, 134 Neb. 265, 278 N. W. 508 (1938). Molly was a mature person who was clearly aware of the fact and possible consequences involved in the situation. We find nothing in the record which supports her assertion that the trial court abused its discretion in failing to award her damages.

We have carefully reviewed the record and find the assignments of error of both the plaintiff and Molly to be without merit. Therefore the judgment of the District Court must be affirmed.

AFFIRMED.